# THE STATE ex rel. MARY H. McCLINTOCK et al. v. JULES E. GUINOTTE, Judge of Probate Court.

## In Banc, July 15, 1918.

1. **CONSTITUTIONAL LAW:** **Descents and Distributions:** **Wills.** There is no constitutional provision restricting the power of the Legislature to change or modify the laws relating to descents and distributions or the laws relating to wills.

2. ————: **Inheritance: Not Natural Right.** Inheritance of property is not an absolute or natural right. There is no constitutional provision which would prohibit the Legislature from changing or abolishing entirely the law as to descents and distributions, whether the transmission of property be by will or by intestacy. The right to inherit property is neither a natural right, nor a constitutional right in this State, but a right which the sovereign may grant or withhold, or may grant upon condition; and since there is no constitutional restriction, the Legislature may abolish or modify the laws permitting the transfer of property by will, as well as statutes governing descents and distributions, and may say what portion, upon an owner's death, shall be appropriated by the State, and to whom and in what proportions the balance shall go.

3. ————: **Inheritance Tax.** The right of the State to foreclose absolutely or partially the right to inherit property, by law or will, and to say what is to become of it when death forecloses the owner's right to control it, is not strictly the exercise of the taxing power, although the percentage to be retained by the State is designated in the statute as a tax, but is the exercise of that other power which inheres in sovereignity, unless restricted by the Constitution, to say what shall be done with the property upon the owner's death. The designation of the portion to be retained or collected by the State as a tax is, in effect, an expression of the condition upon which the persons designated in the statutes of descents and distributions or in the testator's will may take the property, and is not a tax at all.

4. ————: ————: **Constitutional Restrictions.** Since a statute prescribing the amount of inheritance taxes shall be imposed on devises or inheritances is not an exercise of the taxing power, the validity of the statute is not affected by the divers and sundry constitutional restrictions relating to taxation.

State ex rel. McClintock v. Guinotte.

5. ———: ———: **Repeal of Conflicting Statutes.** The fact that the Act of 1917 designates the portion of an inheritance wnich the State is to retain or collect as a tax and that it does not in express words repeal statutes relating to descents and distributions or wills, does not make it an exercise of the taxing power. In spite of those things, it operates to repeal so much of those statutes as conflict with it.

6. ———: ———: **Due Process.** An inheritance law, which requires the probate court to appraise the property owned by a decedent, and to exempt $15,000 of that devised to or inherited by his widow and $5,000 of that devised to or inherited by each of his children, and requires an appropriation by the State of certain graduated percentages of the balance, as a condition of their receiving the inheritances or devises, not being an exercise of the power of taxation, does not in any sense deny to them due process of law.

7. ———: ———: **Title Act: Repeal of Conflicting Existing Statutes.** The title to the Inheritance Law of 1917 is in all respects sufficient, although the body of the act modifies or repeals, not by express words but by affirmative provisions, certain conflicting portions of the statutes relating to descents and wills, and no reference is made to them in the title. The body of the act is within the purview of the title and is clearly indicated by it, and that is sufficient; and that being true, so much of the existing statutes as conflict with it will be held to be to that extent repealed or modified.

8. ———: ———: **Payment into State Treasury.** Devisees or heirs, whose inheritances or devises have by the probate court been charged by its judgment with taxes according to the Inheritance Law, are not, in a *certiorari* to that court, by which they attack the constitutionality of said act, in any position to raise the point that the act violates that portion of the Constitution which provides that no money shall be diverted from the State Treasury except by proper appropriation bills. Whether that portion of the act requiring the money to be paid into the State Treasury and providing that upon proof of an erroneous payment the amount of the tax erroneously paid may be refunded, is valid or invalid, does not concern them, and is not in the case, and therefore is not decided, for even if that part of the act is invalid the rest of it is not.

9. ———: ———: **Local or Special Law.** The Inheritance Law of 1917 is a general and not a special or local law.

10. ———: ———: **Graduated: Unnatural Classification: Public Welfare.** The classifications made by the Inheritance Law of 1917, which exempts from the tax $15,000 of decedent's property for the widow and $5,000 for each child, and fixes a tax of one per cent on the balance up to $20,000, and a tax of two per cent on the

next $20,000, and a tax of three per cent on the next $40,000, and larger percentages, by a graduated scale, on larger amounts, is not unreasonable. The reasonableness of a classification is to be measured in the light of modern public welfare, and that may require a graduation of the tax in proportion to the amount of property given to the legatees or heirs by the State, which has the power to appropriate the whole of decedent's property upon his death. A law which classifies the recipients of the State's favor according to the amounts received is not an unreasonable classification.

11. ———: ———: **Taxation on Property: Uniform: According to Value: Public Purpose.** The Inheritance Law of 1917 is not an exercise of the taxing power of the State; but even if it be the exercise of the taxing power, it is not a tax upon property, but a tax upon the transmission or succession of property upon the death of the owner, and not being a tax upon property it does not violate the constitutional provision declaring that taxes can be levied only for a public purpose, or the provision that taxes shall be uniform upon the same class of subjects, or the provision that all property subject to taxation shall be taxed in proportion to value.

12. ———: ———: **Classification According to Burden.** There can be a class within a class, and a classification by an inheritance law of recipients of a decedent's property according to amounts received and kinship is not unreasonable. Property passes upon the owner's death to others only by the grace of the State, and if the burdens imposed as a condition of succession be graduated according to amounts received or relationships to him they do not constitute an unconstitutional classification, even though they be imposed by an exercise of the taxing power. But the provisions of the Constitution concerning taxation have reference to those burdens or taxes fixed by law which are recurrent at fixed periods, not to duties imposed which occur only once, and hence they are not applicable to what is ordinarily denominated an inheritance tax.

## Certiorari.

WRIT QUASHED.

*Beardsley & Beardsley, Martin E. Lawson,* and *John M. Atkinson,* for appellant.

(1) The Inheritance Tax Act of 1917 is violative of Section 3 of Article 10 of the Constitution of Missouri in that said tax is (a) not uniform upon the same class of subjects, as it provides for a graduated or progressive tax on the same class of subjects, and (b) provides

different exemptions on the same class of subjects. State ex rel. v. Switzler, 143 Mo. 287; State ex rel. v. Henderson, 160 Mo. 190; Knowlton v. Moore, 178 U. S. l. c. 70; Cope's Estate, 191 Pa. St. 24; State ex rel. v. Ferris, 53 Ohio St. 314; Haggerty v. State, 55 Ohio St. 613; Ohio Laws 1894, p. 169; Allen v. Smith, 84 Ohio St. 292; Snell v. State Railway Company, 60 Ohio St. 269; Southern Gum Company v. Laylin, 66 Ohio St. 594; State v. Hamlin, 86 Me. 495; Magoun v. Ill. Trust & Savings Bank, 170 U. S. 292; City of St. Louis v. Speigel, 75 Mo. 145; City of St. Louis v. Speigel, 90 Mo. 587; City of St. Louis v. Bowler, 94 Mo. 630; City of Independence v. Gates, 110 Mo. 374; Kansas City v. Whipple, 136 Mo. 475; Kansas City v. Grush, 151 Mo. 128; State ex rel. v. Ashbrook, 154 Mo. 375; State v. Bengsch, 170 Mo. 81; State ex rel. v. St. Louis, 216 Mo. 91; State v. Miksicek, 225 Mo. 561; State v. Broadnax, 228 Mo. 25; Levee District v. Railroad, 240 Mo. 614; State ex rel. v. Burton, 266 Mo. 721; Magoun v. Ill. Trust & Savings Bank, 170 U. S. 283. (2) Said Inheritance Tax Act of 1917 is violative of Section 43 of Article 4 of the Constitution of Missouri which provides that all revenue collected and moneys received by the State from any source whatever shall go into the Treasury, and the General Assembly shall have no power to divert the same or to permit money to be drawn from the Treasury except in pursuance of regular appropriations made by law, in that said act provides that the State Treasurer shall permit money to be drawn from the Treasury without appropriations first being made by law. Ex-parte Lucas, 160 Mo. 218; State v. Schramm, 199 S. W. 194; Friend v. Levy, 76 Ohio St. 50; State ex rel. v. Walsh, 28 Wis. 549; State v. Bockstock, 136 Mo. 353; State v. Bengsch, 170 Mo. 114. (3) Said Inheritance Tax Act of 1917 violates Subsections 16 and 21 of Section 53 of Article 4 of the Constitution of Missouri which provides that the General Assembly shall not pass (a) any local or special law changing the law of descent or succession, or (b) any special law affecting the estates of minors or persons under disability. Re Cope's Estate,

191 Pa. St. 24-25; Hager v. Walker, 128 Ky. 12; Exparte Lucas, 160 Mo. 230; State ex rel. v. Burton, 266 Mo. 720. (4) Said Inheritance Tax Act of 1917 violates Section 30 of Article 2 of the Constitution of Missouri and Section 1 of the Fourteenth Amendment to the Federal Constitution, in that said act deprives relators and other persons of property without due process of law. Thorpe v. Miller, 137 Mo. 231; Ferry v. Campbell, 110 Iowa, 290; Davidson v. Board of Admrs. of New Orleans, 96 U. S. 97; Embree v. Kansas City & L. B. Road Dist., 240 U. S. 242.   (5) Said Inheritance Tax Act of 1917 violates Section 28 of Article 4 of the Constitution of Missouri, in that said Act (a) contains more than one subject, and (b) which subjects are not clearly expressed in its title.   St. Louis v. Tiefel, 42 Mo. 578; State v. Miller, 45 Mo. 495; State ex rel. v. Miller, 100 Mo. 439; State v. Bronson, 115 Mo. 271; Lynch v. Murphy, 119 Mo. 163; State ex rel. v. Slover, 134 Mo. 10; Gabbert v. Ry., 171 Mo. 84; State v. Coffee & Tea Co., 171 Mo. 634; Ferguson v. Gentry, 206 Mo. 189.   (6) Said Inheritance Tax Act of 1917 violates the uniformity clause of said Section 3 of Article 10 of the Constitution of Missouri, in that said act classifies all beneficiaries into five legislative classifications, which classifications are purely arbitrary and discriminatory.   Kansas City v. Grush, 151 Mo. 135.

*Frank W. McAllister*, Attorney-General, *S. E. Skelley, George V. Berry, Thomas J. Cole* and *John T. Gose*, Assistant Attorneys-General, for respondent.

(1)   History of inheritance taxation.   Gibbon's Decline and Fall of the Roman Empire, pp. 133, 163 164; West on Inheritance Tax, p. 11; Dowell's History of Taxation in England, 148; State v. Alston, 94 Tenn. 674; Magoun v. Ill. Trust & Savings Co., 170 U. S. 283; State v. Hamlin, 86 Me. 495; Blakemore & Bancroft, Inheritance Taxes, ch. 4, p. 13; Ross, Inheritance Taxation, p. 17; Knowlton v. Moore, 178 U. S. 41; Matter of McPherson, 104 N. Y. 306; Pollock v. Farmers Loan

& Trust Co., 158 U. S. 601; In re McKennan, 130 N. W. (S. D.) 33; Appeal of Nettleton, 76 Conn. 235; Review of Reviews, February, 1893; Maguire v. University, 271 Mo. 363. (2) Inheritance taxation from an ecomomic standpoint. Max West, Monograph on Inheritance Tax, p. 189; Adam Smith, Wealth of Nations, Book 5, Chap. 2, Part 2; Mills, Principles of Political Economy, Book 5, Chap. 11, sec. 3; Minnesota Tax Commission Report, 1910; In re Morris, 138 N. C. 259; State v. Bazille, 97 Minn. 16; Magoun v. Ill. Trust & Savings Co., 170 U. S. 293; In re McKennan, 130 N. W. (S. D.) 38; Knowlton v. Moore, 178 U. S. 109; Blakemore & Bancroft, Inheritance Taxes, chap. 3. (3) The power of the General Assembly to levy an inheritance tax is an inherent power. Snyder v. Bettman, 190 U. S. 252; Magoun v. Ill. Trust & Savings Bank, 170 U. S. 292; Booth v. Commonwealth, 130 Ky. 88; Matter of McPherson, 104 N. Y. 306; Eury v. State, 74 Ohio St. 448; Schoolfield v. Lynchburg, 78 Va. 372; State v. Dalrymple, 70 Md. 294; State v. Clark, 30 Wash. 439; In re Morris, 138 N. C. 259; State v. Lancaster, 4 Neb. 537; In re Joslyn, 76 Vt. 88; In re McKennan, 130 N. W. (S. D.) 33; Mager v. Grima, 8 How. 493; People v. Griffith, 245 Ill. 532; Appeal of Nettleton, 76 Conn. 235; State ex rel. v. Henderson, 160 Mo. 216; Ross, Inheritance Taxation, sec. 14, p. 20. (4) An inheritance tax is not a property tax. State ex rel v. Henderson, 160 Mo. 215; Knowlton v. Moore, 178 U. S. 41; Magoun v. Ill. Trust & Savings Bank, 170 U. S. 283; United States v. Perkins, 163 U. S. 625; Plummer v. Coler, 178 U. S. 115; National Safe & Deposit Co. v. Illinois, 232 U. S. 58; Scholey v. Rew, 90 U. S. 331; State v. Handline, 100 Ark. 175; In re Wilmerding, 117 Cal. 281; Brown v. Elder, 32 Colo. 527; Kochersperger v. Drake, 167 Ill. 122; McGhee v. State, 105 Iowa, 9; Booth v. Commonwealth, 130 Ky. 88; Succession of Kohn, 115 La. 71; State v. Hamlin, 86 Me. 495; State v. Dalrymple, 70 Md. 294; Minot v. Winthrop, 162 Mass. 113; Union Trust Co. v. Probate Judge, 125 Mich. 484; State v. Bazille, 97 Minn. 11; Gelsthorpe v.

State ex rel. McClintock v. Guinotte.

Furnell, 20 Mont. 299; State v. Vinsonhaler, 94 Neb. 675; Hartmann's Appeal, 70 N. J. Eq. 664; Matter of White, 208 N. Y. 64; Morris Estate, 138 N. C. 259; In re McKennan, 130 N. W. (S. D.) 33; State v. Alston, 94 Tenn. 674; In re Joslyn, 76 Vt. 88; Eyre v. Jacob, 14 Gratt. 429; White v. Tax Commission, 42 Wash. 360; Beals v. State, 139 Wis. 544; Kingsbury v. Chapin, 196 Mass. 533; In re Touhy, 35 Mont. 431; State v. Bullen, 143 Wis. 518; In re Kennedy, 157 Cal. 517; In re Macky, 45 Colo. 316; In re Speed, 203 U. S. 553; Humphreys v. State, 70 Ohio St. 67; Knox v. Emerson, 123 Tenn. 409; Attorney-General v. Stone, 209 Mass. 186; Blakemore & Bancroft, Inheritance Taxes, chap. 2; Ross, Inheritance Taxation, secs. 4 and 5; Gleason & Otis, Inheritance Taxation, pp. 1-11; Mager v. Grima, 8 How. 493. (5) Section 4 of Article 10 of the Constitution of Missouri, providing that all property subject to taxation shall be taxed in proportion to its value, relates only to a tax on property, and does not apply to excise taxation or taxes other than those on property. Massachusetts Bonding & Ins. Co. v. Chorn, S. W. Advance Sheets, April 24, 1918; Bankers' Life v. Chorn, 186 S. W. 682; Masonic Aid v. Waddill, 138 Mo. 628; Aurora v. McGannon, 138 Mo. 38; American Express Co. v. St. Joseph, 66 Mo. 675; Ward v. Board, 135 Mo. 309; State ex rel. v. Henderson, 160 Mo. 190; State v. Bixman, 162 Mo. 1; Glasgow v. Rowse, 43 Mo. 479; St. Louis v. Green, 7 Mo. App. 468, 70 Mo. 562. (6) Section 3 of Article 10 of the Constitution of Missouri, providing that taxes shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax, is complied with when the tax operates alike upon all those similarly situated or in like circumstances. State v. McGannon, 138 Mo. 49; Masonic Aid v. Waddill, 138 Mo. 637; Pacific Express Co. v. Seibert, 142 U. S. 350; Bankers' Life v. Chorn, 186 S. W. 683; Kansas City v. Richardson, 90 Mo. App. 456; St. Louis v. Green, 7 Mo. App. 468; City v. Green, 70 Mo. 562; State ex rel. v. Henderson, 160 Mo. 216.

(7) Classification according to degree of relationship, discrimination between lineal and collateral relatives and strangers to the blood of the decendent, is now well recognized and firmly established as being within the power and discretion of the Legislature; and such classification and discrimination is held not to offend any constitutional rule of uniformity and equality. Keeney v. New York, 222 U. S. 536; Estate of Wilmerding, 117 Cal. 281; Estate of Campbell, 200 U. S. 87; In re McKennan, 130 N. W. 33; Kochersperger v. Drake, 167 Ill. 122; Magoun v. Illinois Trust & Savings Bank, 170 U. S. 287; Knowlton v. Moore, 178 U. S. 41; Estate of Magnes, 32 Colo. 527; Appeal of Nettleton, 76 Conn. 235; Billings v. State, 189 Ill. 472, 59 L. R. A. 807; Booth v. Commonwealth, 113 S. W. (Ky.) 61; State v. Hamlin, 86 Me. 495, 41 Am. St. 569, 25 L. R. A. 632; Tyson v. State, 28 Md. 577; State v. Dalrymple, 70 Md. 294, 3 L. R. A. 372; Minot v. Winthrop, 162 Mass. 113, 26 L. R. A. 259; Frothingham v. Shaw, 175 Mass. 59, 78 Am. St. 475; Union Trust Co. v. Wayne Probate Judge, 125 Mich. 487; State v. Bazille, 97 Minn. 11, 6 L. R. A. (N. S.) 732; State v. Vance, 97 Minn. 532, 106 N. W. 98; Drew v. Tift, 79 Minn. 175, 75 Am. St. 446, 47 L. R. A. 525; State v. Henderson, 160 Mo. 190; Gelsthorpe v. Furnell, 20 Mont. 299, 39 L. R. A. 170; Thompson v. Kidder, 74 N. H. 89; Estate of McPherson, 104 N. Y. 306, 58 Am. Rep. 502; Pullen v. Commissioners of Wake Co., 66 N. C. 361; Hagerty v. State, 55 Ohio 613; State v. Alston, 94 Tenn. 674, 28 L. R. A. 178; Eyre v. Jacob, 14 Gratt. 422, 72 Am. Dec. 367; State v. Clark, 30 Wash. 439; Nunnemacher v. State, 129 Wis. 190, 9 L. R. A. (N. S.) 121; Wallace v. Myers, 38 Fed. 184, 4 L. R. A. 171; In re Benton, 234 Ill. 366; In re Touhy, 35 Mont. 431; Dixon v. Ricketts, 26 Utah, 215; In re Fox, 154 Mich. 5; Commonwealth v. Randall, 225 Pa. St. 197; Beals v. State, 139 Wis. 544; Ross on Inheritance Taxation, sec. 21; Blakemore & Bancroft, Inheritance Taxes, sec. 62. (8) The power and right of the Legislature to grant exemptions is now generally conceded. The right to make ex-

emptions is involved in the right to select a subject of taxation. In re McKennan, 130 N. W. (S. D.) 33; Estate of Wilmerding, 117 Cal. 281; Estate of Stanford, 126 Cal. 112, 45 L. R. A. 788; Estate of Magnes, 32 Colo. 527; Appeal of Nettleton, 76 Conn. 235; Ferry v. Campbell, 110 Iowa, 290, 50 L. R. A. 92; State v. Hamlin, 86 Me. 495, 41 Am. St. 569, 25 L. R. A. 632; Minot v. Winthrop, 162 Mass. 113, 26 L. R. A. 259; Union Trust Co. v. Wayne, 125 Mich. 487; Gelsthorpe v. Furnell, 20 Mont. 299, 39 L. R. A. 170; Pullen v. Commissioners of Wake Co., 66 N. C. 361; State v. Guilbert, 70 Ohio St. 229; State v. Alston, 94 Tenn. 674, 28 L. R. A. 178; Estate of Hickok, 78 Vt. 259; State v. Clark, 20 Wash. 439; High v. Coyne, 93 Fed. 450; Beers v. Glenn, 211 U. S. 477; Magoun v. Ill. Trust & Savings Bank, 170 U. S. 283; Booth v. Commonwealth, 130 Ky. 88; In re opinion of Justices, 79 N. H. 597; Commonwealth v. Randall, 225 Pa. St. 197; Beals v. State, 139 Wis. 544; In re Speed, 216 Ill. 23, 203 U. S. 553; In re Morris, 138 N. C. 259. (9) A progressive rate of taxation, or making the tax rate increase with the value of the estate transmitted, does not make a statute unconstitutional. Whether the progressive rate be applied to both lineal and collateral heirs and strangers, or to collateral heirs alone, or only to distant relatives and strangers, is a matter within the discretion of the Legislature. In re McKennan, 130 N. W. (S. D.) 33; Keeney v. New York, 222 U. S. 536; Estate of Magnes, 32 Colo. 527; Appeal of Nettleton, 76 Conn. 235; Kochersperger v. Drake, 167 Ill. 122, 41 L. R. A. 446; Union Trust Co. v. Durfee, 125 Mich. 487; State v. Bazille, 97 Minn. 11, 6 L. R. A. (N. S.) 732; State v. Vinsonhaler, 74 Neb. 675; Morris's Estate, 138 N. C. 259; State v. Clark, 30 Wash. 439; Nunnemacher v. State, 129 Wis. 190, 9 L. R. A. (N. S.) 212; Knowlton v. Moore, 178 U. S. 41; Tyson v. State, 28 Md. 577; Magoun v. Illinois Trust & Savings Bank, 170 U. S. 283; Ross on Inheritance Taxation, sec. 26; Blakemore & Bancroft, Inheritance Taxes, sec. 64; In re Fox, 154 Mich. 5; State v. Guilbert, 70 Ohio St. 255. (10) The

Inheritance Tax statute does not violate the Fourteenth Amendment to the Federal Constitution providing for equal protection of the laws and due process of law. Pacific Express Co. v. Seibert, 142 U. S. 339; Magoun v. Illinois Trust & Savings Bank, 170 U. S. 293. (11) Section 12, Inheritance Tax Act, does not contemplate a refund by the treasurer in an unconstitutional manner. Lowery v. School Trustees, 140 N. C. 41. Section 12 provides for a mere detail in the administration of the law, and even though it were unconstitutional, it would not invalidate the entire act. Union Trust Co. v. Durfee, 125 Mich. 495; In re Keeney, 194 N. Y. 286; Friend v. Levy, 76 Ohio St. 50; Blakemore & Bancroft, Inheritance Taxes, sec. 37; State ex rel. v. Henderson, 160 Mo. 217; Matter of McPherson, 104 N. Y. 306. (12) The classification in the Inheritance Tax Act is not arbitrary and discriminatory. Kochersperger v. Drake, 167 Ill. 122; Magoun v. Illinois Trust & Savings Bank, 170 U. S. 287; Knowlton v. Moore, 178 U. S. 41; In re McKennan, 130 N. W. 33; In re Fox, 154 Mich. 5; · Keeney v. New York, 222 U. S. 536; State v. Guilbert, 70 Ohio St. 255; and, generally, authorities cited under Points 6, 7, 8 and 9 above.

GRAVES, J.—This is *certiorari* to the probate court of Jackson County. To our writ return has been made by certifying up the full record. The real point is the validity or non-validity of the 1917 Act of the Missouri Legislature, commonly called the Inheritance Tax Law, Laws of Missouri 1917, page 114. The title of the act reads:

"AN ACT providing for a tax on the transfer of gifts, legacies, inheritances, bequests, devises, appointments and successions; providing for its payment and collection, establishing and enforcing liens therefor; providing the method of procedure for determining the amount thereof and liability therefor and providing for suits to quiet title against claims of liens arising by reason thereof and to repeal Article 14, Chapter 2, of the

Revised Statutes of Missouri of 1909, entitled 'Collateral Inheritance Tax,' and all amendments thereto.''

The probate court of Jackson County was proceeding under this Act of 1917, in the estate of Robert McClintock, deceased. The court appointed one John A. Kurtz to appraise and fix the clear market value of each interest in the estate, which was done.

By his will Robert McClintock, deceased, had divised all of his large estate to his wife, Mary H. McClintock, his son, Robert S. McClintock, and his two granddaughters, all of whom are relators herein. The said Kurtz found the value of the interests and fixed the taxes as follows:

"(1)   Robert S. McClintock, son, real estate of the value of $100,000, personal property of the value of $28,162.50, making a total value of $128,162.50, and deducted therefrom, as a legal exemption, the sum of $5000, and charged an inheritance tax against the remining sum of $123,162.50 at the rate of one per cent on the first $20,000, after allowing said sum of $5000 as a legal exemption, and two per cent on amounts from $20,000 to $40,000, and three per cent on amounts from $40,000 to $80,000, and four per cent on amounts from $80,000 to $200,000, thus assessing and fixing the total inheritance tax charged against the interest of said relator, Robert S. McClintock, in the sum of $3,526.50; (2)    Mary Agnes Keller, grand-daughter, personal property of the value of $28,250, and deducted therefrom as a legal exemption the sum of $5000, and charged an inheritance tax against the remaining sum of $23,250, at the rate of one per cent on the first $20,000, after allowing said sum of $5000 as a legal exemption, and two per cent on amounts from $20,000 to $40,000, thus assessing and fixing the total inheritance tax charged against the interest of said relator, Mary Agnes Keller, in the sum of $265; (3) Martha Agnes Keller, granddaughter, personal property of the value of $28,250, and deducted therefrom as a legal exemption the sum of $5000, and charged an inheritance tax against the remaining sum of $23,250, at the rate of one per cent on

the first $20,000, after allowing said sum of $5000 as a legal exemption, and two per cent on amounts from $20,000 to $40,000, thus assessing and fixing the total inheritance tax charged against the interest of said relator, Martha Agnes Keller, in the sum of $265; (4) Mary H. McClintock, widow, real estate of the value of $40,500, personal property of the value of $24,868.69, making a total of $65,368.69, and deducted therefrom as a legal exemption the sum of $15,000, and charged an inheritance tax against the remaining sum of $56,368.69, at the rate of one per cent on the first $20,000, after allowing said sum of $15,000, as a legal exemption, and two per cent on amounts from $20,000 to $40,000, and three per cent on amounts from $40,000 to $80,000, thus assessing and charging the total inheritance tax charged against the interest of said relator, Mary H. McClintock, in the sum of $911.06, thus making the total inheritance tax charged against said estate of Robert McClintock, deceased, in the sum of $4967.56.''

The judgment of the probate court followed the recommendation of Kurtz, and it is this judgment which relators challenge here. They challenge this judgment and proceeding in the probate court, thus:

''Relators further state that said probate court was without any authority, power and jurisdiction in the premises, aforesaid, for the reason that said act providing for said inheritance tax, in pursuance of which said probate court proceeded in the premises, is unconstitutional, void and of no effect, because it is in conflict with and in violation of the Constitution of the State of Missouri and of the Cinstitution of the United States in the following particulars:

''(1)  Section 30 of Article 2 of the Constitution of Missouri, which provides that no person shall be deprived of property without due process of law.

''(2)  Section 28 of Article 4 of the Constitution of Missouri, which provides that no bill shall contain more than one subject, which shall be clearly expressed in its title.

"(3)   Section 43 of Article 4 of the Constitution of Missouri, which provides that all revenue collected and moneys received by the State from any source whatever shall go into the Treasury, and the General Assembly shall have no power to divert the same or to permit money to be drawn from the Treasury except in pursuance of regular appropriations made by law.

"(4)  Subsection 16 of Section 53 of Article 4 of the Constitution of Missouri, which provides that the General Assembly shall not pass any local or special law changing the law of descent or succession.

"(5)  Subsection 21 of Section 53 of Article 4 of the Constitution of Missouri, which provides that the General Assembly shall not pass any local or special law affecting the estates of minors or persons under disability.

"(6) Section 3 of Article 10 of the Constitution of Missouri, which provides that taxes may be levied and collected for public purposes only and that they shall be uniform upon the same class of subjects within the territorial limits of the authority levying such taxes.

"(7)   Section 4 of Article 10 of the Constitution of Missouri, which provides that all property subject to taxation shall be taxed in proportion to its value.

"(8)   Section 8 of Article 10 of the Constitution of Missouri, which fixes the rate of the state tax on property.

"(9)   Section 1 of the 14th Amendment of the Constitution of the United States, in that said act (1) deprives relators and other persons of property without due process of law; and (2) denies to relators and other persons within its jurisdiction the equal protection of the law."

This suffices to state the case.

I.   Before taking up the things urged against this law, it might be well to see just what the law is, in fact.   Throughout it speaks of a tax on transfer of property.   But the word "tax" has a broad as well as a restricted meaning.   We must consider the act as a whole to get the legislative idea.

Inheritance.

It is clear from a reading of this law that the law-making power was impressed with the idea that the right of inheritance was not an absolute right, but on the other hand was a right which might or might not be granted by the State. It is also clear that the Legislature recognized its power to change and modify the law as to descents and distributions, for we have no constitutional provisions restricting the law-makers in this regard. Whilst by the Constitution we are com-pelled to recognize certain common law rules, yet we are not compelled to recognize them after the law-makers of the State change or abolish them.

Inheritance of property is not an absolute or natural right, and is not a right which may not be abolished by the law-makers. We mean by this, that there is no constitutional provision in this State which would prohibit the law-making power changing or abolishing entirely the law as to descents and dis-tributions. That we have changed these laws (and radically so) is made apparent by our decisions. [Perry v. Strawbridge, 209 Mo. 621.] If under the Constitution we can radically change such laws, we can likewise abolish them, and this on the theory that the right of inheritance of property is not a natural right, but one purely produced by the laws of the sovereign. In 9 R. C. L. p. 13, sec. 7, it is said:

"It has been asserted in a comparatively recent case, that the right to demand that property pass by inheritance or will is an inherent right subject only to reasonable regulation by the Legislature. It seems, however, that no authority can be found to support this view, which is contrary, furthermore, to that of all the historians of law and of all economic writers. Indeed, the entire body of the law of descent and dis-tribution seems to have been built upon the opposite con-clusion, viz., that the right to take property, either real or personal, by inheritance, is purely statutory, and it is said that all statutes regulating the descent and distribution of interstate estates may be considered as positive, and, in some degree, arbitrary rules, which

cannot be changed by the court in order to make them conform to its conception of right and justice in particular cases."

The author has cited the numerous cases, which are practically all one way. The recent case to which he refers is that of Nunnemacher v. State, 129 Wis. 190. Even in the majority opinion of this case, at page 198, we find this admission:

"We are fully aware that the contrary proposition has been stated by the great majority of the courts of this country, including the Supreme Court of the United States. The unanimity with which it is stated is perhaps only equaled by the paucity of reasoning by which it is supported. In its simplest form it is thus stated: 'The right to take property by devise or descent is the creature of the law and not a natural right.' [Magoun v. Ill. T. & S. Bank, 170 U. S. 283, 18 Sup. Ct. 594.] In Eyre v. Jacob, 14 Gratt. 422, it is stated more sweepingly thus: 'It (the Legislature) may tomorrow, if if pleases, absolutely repeal the statute of wills, and that of descents and distributions, and declare that upon the death of a party, his property shall be applied to the payment of his debts and the residue appropriated to public uses.'

"But it has been reserved for the Supreme Court of North Carolina to sweep away all natural property rights in a few terse sentences, which may well be quoted: 'Property itself, as well as the succession to it, is the creature of positive law. The Legislature declares what objects in nature may be held as property; it provides by what forms and on what conditions it may be transmitted from one person to another; it confines the right of inheriting to certain persons whom it defines heirs; and on the failure of such it takes the property to the State as an escheat. The right to give or take property is not one of those natural and inalienable rights which are supposed to precede all government and which no government can rightfully impair.' [Pullen v. Commrs., 66 N. C. 361.]"

The learned judge who wrote that opinion writes interestingly upon the conceived natural right to inherit property, but frankly concludes that the courts are against him. From an early day this court has been against the doctrine of the Wisconsin court. See the outline of the origin of our laws as to descents and distribution, by SCOTT, J., in Leakey v. Maupin, 10 Mo. l. c. 370.

The right to inherit property is not a natural right, but a right conferred by the laws of the sovereign. It is not a constitutional right in our State. The sovereign may grant or withhold the right. The sovereign having the full power to withhold the right, may grant the right upon any conditions which it sees proper to impose, provided the conditions, so imposed, do not contravene constitutional provisions. The consensus of court views is thus expressed in 9 R. C. L. p. 14:

"As the right to take by descent is property only by reason of the fact that the law-making body has seen fit to make it such, the Legislature has absolute power to control the manner in which property shall descend and be distributed, subject, of course, to constitutional limitations, which, however, place no limit on the general Legislative control. Accordingly, when a man dies intestate the supreme authority of the law may give his personal property away according to its absolute will and pleasure, may enlarge the privilege of freedom from appropriation to the payment of debts, may impose conditions or burdens on a right of succession, or may even declare that on the death of a person his property shall be applied to the payment of his debts, and the residue appropriated to public uses. Similarly, the Legislature may, at will, change the laws of descent and distribution, subject only to the preservation of rights already vested by the operation of the prior law. Jurisdictionally, descent is entirely subject to the local regulation and control of the several States. The power of the Legislature with respect to the liability of the estate for the intestate's debts is considered elsewhere in this article."

What is said as to descent and distribution under laws granting such, applies to descents and distributions by instruments (such as wills) which take effect upon the death of the party executing the instrument.

The sovereign power which can close the avenues of descent and distributions, as expressed in previous laws (whether civil, common or statutory), can with equal propriety reach the laws as to wills. In other words, the State, unless prohibited by the Constitution thereof, can prohibit entirely the transfer of property by will. Having the absolute power to prohibit, it can, on the doctrine, that the whole covers all the lesser parts, grant the right, and place thereon restriction. And these restrictions are valid (whatever they may be) unless in them can be found some violation of other constitutional provisions. So that under the great weight of the authorities, we rule (1) that the taking of property by inheritance or by will is, not an absolute or natural right, but one created by the laws of the sovereign power. This court has so said. [State ex rel. v. Henderson, 160 Mo. 1. c. 216.] (2) That this sovereign power (the State in this case) may foreclose the right absolutely, or it may grant the right upon conditions precedent, which conditions, if not otherwise violative of our Constitution, will have to be complied with before the right of descent and distribution (whether under the law or by will) can exist. And (3) that this right of the State to foreclose absolutely, or partially, the right to inherit, by law or will, is not strictly the exercise of the taxing power of the State, but the exercise of that other power of the State which is inherent in its sovereignty, which allows the State or the Nation, to say what shall be done with the property owned by the citizen, at the time of his death. No provision of the Missouri Constitution stays the free hand of our law-makers as to the disposition of property owned by a citizen at the time of his death. It can be appropriated by the State, if the law-makers so decree. It may be partially taken, if the law-makers so decree. It may be permitted to descend (by will or otherwise)

upon conditions precedent, if the law-makers so decree.

In this case the effect of the law is to permit the property of a deceased person to pass to others, rather than to the State, but upon the conditions in the law prescribed. It is not strictly the exercise of the taxing power at all. It is however, the exercise of a sovereign power, which has not been prohibited by the Constitution, for it is so recognized. But what we do mean is that laws which take possession of the property of a deceased person, and fixes conditions precedent upon the transfer thereof, are not necessarily the exercise of the taxing power at all.

The character of the law must be determined from its effect, rather than from the technical name which may be given thereto. [State v. Bengsch, 170 Mo. p. 81 and other cases determining whether a law was intended for a tax on property or otherwise.] After the passage of the Act of 1917, it is clear that the Legislature intended to limit the transfer of property from the estate of the deceased to others. It is clear that the whole property is placed in the hands of the custodian of the State, subject to the conditions precedent to the transfer.

Upon the whole we are firmly convinced that the law is not referable to the taxing power at all, but is referable to the power of the State to say what becomes of the property of a person, when death forecloses his right to control it. With this view of the case there is not much left therein. We shall, however, discuss the matter from other angles suggested in the briefs.

II.  On the theory that the law is not the exercise of the taxing power, but of another and different sovereign power, the divers and sundry constitutional provisions as to taxation disappear from the case. **Taxing Power.** This for the reason that these constitutional provisions are but limitations upon the exercise of the taxing power, and none other. But as said above, whilst these are our views, we will discuss the other

matters out of respect for learned counsel urging them, and in view of the fact that this court has heretofore discussed the question along such lines—ruling that a somewhat similar law did not fix a tax upon property, but that an obligation fixed on the transfer of property was not a tax upon property itself. [State ex rel v. Henderson, 160 Mo. 190; Maguire v. University, 271 Mo. l. c. 359.]

These cases do speak of the law as fixing a tax upon the transfer of property, and upon that phase of the case we will later give our views—not because we think either law is referable to the taxing power of the State, but for the reason assigned above.

The idea that such laws are the exercise of the taxing power of the State no doubt comes from expressions of the laws themselves, and because in them we find no direct repeal of statutes relative to descents and distributions, or wills. Statutes, however, may be repealed or modified by later statutes, which conflict therewith, and in this case we have a statute which imposes conditions precedent to inheritance, which clearly conflict with previous laws as to descents and distributions, and also the law as to wills. To illustrate, the present law as to descents and distributions does not contain any limitations upon the right, as is contained in the law now before us. In so far as the latter law conflicts with the former, it repeals it. So too as to the law of wills.

III. Before taking up this case upon the theory that it is a tax of some kind, and in following up the theory of the views expressed in our point one, supra, it is well to guage the contentions of the **Constitutional Questions.** relator to those views. In the statement are found the constitutional provisions that this law is supposed to offend. Of these for a moment.

(1) If the law is what we think it is, and what our paragraph one holds it to be, then Section 30 of Article 2 of the Missouri Constitution is in no way violated. This, because the law in question is but the exercise of

the sovereign power of the State, and cannot be said to be the taking of property without due process of law. Not only so, but the State has the right to say whether the heirs have any right to property of the deceased, and if the State in the exercise of its sovereignty says they shall have no such right or says that they shall have only a limited right, there is no such question as a failure of due process of law in the case.

(2) It is next suggested as a constitutional objection that Section 28 of Article 4 provides that no bill shall contain more than one subject, which shall be clearly expressed in the title. This is really the only constitutional dart that strikes at the position taken in our point one, supra.

It was evidently interposed upon the theory that we might conclude that the law under review repealed or modified in a way the laws as to descent and distributions and wills, and that the title to this bill did not so indicate. A sufficient answer to this view can be shortly stated. The title to this act we have set out in full. There can be no question that the law follows the title and is within the purview of the title. True it is that it does not in the title nor in the bill provide for a repeal or modification of the laws as to descent and distribution of the law of wills. The title clearly indicated just what the law-makers did, and this is sufficient. If the law as passed (being within the purview of the title to the bill) had the legal effect of repealing or modifying previous laws, that is a question for the courts to determine under the usual rules of statutory construction. One rule is, that if a later law conflicts with an earlier one, the later law operates to repeal or modify the earlier one to the extent of the conflict. So that if the law passed is fairly within the purview of the title to the bill it is a good law, and it then remains for the court to say whether such law repeals or modifies other existing laws. In this case the law passed was strictly within the purview of the title to the bill. We hold, however, that it modifies the law as to descent and distributions

and the law as to wills, which, as a court, we have a right to do.

(3)   We are cited to Section 43 of Article 4 of the Missouri Constitution, which provides that no money shall be diverted from the State Treasury except by a proper appropriation bill. This question is not in this case under the pleadings and will not be passed upon now.

Relators do not place themselves in a position to question this portion of the act. Whether this portion of the act is valid or invalid does not interest them. But even if this portion of the act might be invalid, it does not follow that the whole act must fall. The section thus attacked is section 12 of the Act, which reads:

"When any tax shall have been paid erroneously to the State Treasurer it shall be lawful for him, on satisfactory proof of said erroneous payment, to refund and pay to the executor, administrator, or trustee, person or persons who paid the same, the amount of such tax so erroneously paid; provided that all applications for the refund of said tax shall be made within two years from the date of said payment."

And also a part of Section 25, which reads:

"Such return of over-payment shall be made in the manner provided by Section Twelve of this act, upon the order of the court having jurisdiction."

It will be observed that these provisions do not necessarily provide for a repayment without further legislative action, in the way of an appropriation.

But we must not, and do not, discuss this matter, because not within the purview of the instant case. Relators have not stated a case under these provisions, and we have no doubt, that, if found necessary, this portion of the act might be stricken out, and yet leave a valid law, which covers the case made by relators.

Paragraph 4, 5, 6, 7, 8 and 9 of the constitutional objections set out in our statement, can in no way be upheld under the views in our paragraph one. (a) The law is not a local or special law changing the law

of descents and succession. It is, if anything, a general law. (b) Neither is it a local or special law affecting the estates of minors or persons under disabilities. It is a general law, and one within the sovereign power of the State to enact. Under the views expressed in our paragraph one, supra, it is not necessary to note the assignments, in numbers 6, 7 and 8 on constitutional questions. These refer solely to the taxing power of the State, and our views are that this law is not referable to that power.

Nor need we hardly mention the 14th Amendment of the Federal Constitution, as to equal protection under the law, and due process of law. These are not in the case in any view of it. These have been too often defined for repetition here. Nor can it be said that the classifications made are unreasonable under our rulings. In State ex rel. v. Henderson, 160 Mo. 216, it is said:

"It is insisted that this act makes an unnatural and unconstitutional classification. It will be observed that it is laid upon collaterals only, and exempts the lineals both ascending and descending, and the husband and wife and adopted children.

"The right of the Legislature to prescribe the right of descent and inheritance cannot be doubted. It is not a natural right. [2 Blackstone's Com., pp. 10 and 13; Strode v. Commr., 52 Pa. 181; State v. Hamlin, 25 L. R. A. (Maine), 632; Eyre v. Jacob, 14 Gratt. 430.]

"The Legislature has seen fit to make this classification, and unless it is so arbitrary that we can say beyond a reasonable doubt that it transcends constitutional limitations, we are bound to accept it."

So also in White v. Railroad, 230 Mo. 287, we had under consideration the question of classification. In that case the question was a close one. Unreasonable classification was urged, but VALLIANT, J., in an opinion for our Court in Banc, in elegantly expressed views, which to those of us who knew him, visualize the man, committed this court to broad views upon the subject. He committed us to a view which requires us to look to the general welfare of the public in the

matter of classifications in law. In other words the reasonableness of the classes created by a law must be weighed in the light of modern day public welfare. This public welfare might require qualified owners of property to pay tribute, or have exemptions, in accordance with and in proportion to the amount of property given them by the State. For under our paragraph one, relations of one deceased only get the property by virtue of a gift (through law) of the State. Not only so, but as held in State ex rel. v. Henderson, supra, we can distinguish between degrees of relationship without making the classification unreasonable. In fact, what the State can do in its sovereign power can hardly be questioned, except upon constitutional grounds, and there are none here.

So that viewing the Act of 1917, from the angle suggested by our point one, and from the questions presented by the pleadings therein, it should be held valid, and we so hold it. These are our views, and cover the entire case, but the questions urged by counsel, on the theory that the law is referable to the taxing power of the State, we will take next. We do not think it referable to that power, and to our mind what we have heretofore written disposes of this case.

IV. Going now to the proposition that this law is the exercise of the taxing power of the State, how stands the case? We are not without some authority here, as well as elsewhere. We have held that the tax, if it be or shall be called a tax, is not a tax upon property. [State ex rel. v. Henderson, 160 Mo. l. c. 215; Maguire v. University, 271 Mo. l. c. 363.] In the latter case, BOND, P. J., traces the history of such laws, and closes the discussion by saying:

"The constitutional principle upon which this excise or duty rests is that it is not a tax upon property, but only on the transmission of property, either by operation of law, or wills or gifts, to take effect upon death. [Ross, Inheritance Taxation, p. 25, sec. 19.]"

It will be observed that the learned writer does not say that it is a tax within the usual construction of that term. He does emphasize the idea that it is a duty imposed by the State upon the transmission of property. He in fact rules what we have ruled in our paragraph one, supra. The general rule seems to be, that, although it be considered as a tax of some character, it can not be considered a tax upon property. Not only is this the general rule, but it is so announced in this State. So that in considering the questions urged against the law, conceding that the law is the exercise of the taxing power of the State, we must proceed upon the theory that it is not a tax upon property. This, because there is no dissent to that question in this State.

V. If it is not a property tax, as we have held, how stand the constitutional objections to the law? Under this proposition the first five points made in relators' petition (set out in full in the statement) may be eliminated, because the discussion hereinbefore made eliminates them here, as well as under the question then under discussion.

It is urged that the law violates Section 3 of Article 10 of the Constitution. This section says that taxes can be levied for public purposes only. There is no question in this case that the money arising from the enforcement of the present law (whether you call it a tax or something else) is used for public purposes. This section then further provides that the taxes so levied "shall be uniform upon the same class of subjects." Nor can there be a question as to the uniformity of the tax or imposition, under the classes, designated by the law. Each class fixed by the law carries the same burden. So that this constitutional provision is not violated. Whether the classification is a reasonable one may with propriety be urged. But that the classes as made by the law (each covering a given line of transmissions of property) and that the particular class (made by the statute) covers all in the class and fixes upon all of the class a uniform burden, can not be

275 Mo.—21

State ex rel. McClintock v. Guinotte.

gainsaid. The only question is as to the validity of the classification. We have held (in the collateral inheritance tax cases) that the making of collateral kin as a class, is not violative of law. [State ex rel. v. Henderson, 160 Mo. 190.] This, thus makes at least two classes to be recognized, direct and collateral kin. As a matter of public policy we have made those classes. But this is not all. In White v. Railroad, supra, the question of classification is fully considered. If there is a reason for the class, the Legislature has full authority to act. Is there reason for classifying interests in an estate of different values into different classes, although such interests may be held by persons of the same degree of relationship to the deceased? This is the concrete question. We have no hesitancy in answering the question in the affirmative. Burdens, to be charged to an inherited estate, or taxes if you see fit so to call them, are the general class. But in White v. Railroad, 230 Mo. 287, we held that there might be a reason for having classes within a class. In burdens, or taxes, if you please to so call them, of the character here involved, it must be noted that the property only passes by the grace of the State. It is upon the right of succession that the obligation is imposed. Throughout the Union graduated burdens of this character (dependent upon the amount inherited) have been recognized, and under such circumstances we should be loth to hold that such sub-classifications were not within the power of the law-makers. We hold that they are.

But beyond all this, when we consider the fact that Section 3 of Article 10 of the Constitution is but a part of the revenue and taxation scheme of the State, we are inclined to the view that it has reference solely to those burdens or taxes fixed by law which are recurrent at fixed periods, not to duties imposed which only occur once. These are our individuals views, and under them, this provision has no application at all to the matter in hand. In these views we may be wrong, hence the discussion on the theory that the classification was not violative of any rule.

If, however, the burden to be assumed by the party to whom the privilege of succession is granted by the law, is not a tax upon property, as we have held, and as the courts generally hold, then the inapplicability of any portion of Article 10 of the Constitution is within the line of reasoning in the cases of State v. Distilling Co., 236 Mo. l. c. 268, 277; State v. Bixman, 162 Mo. 1; and St. Louis v. United Railways, 263 Mo. l. c. 449.

VI. It is next urged that the law contravenes Section 4 of Article 10 of the Missouri Constitution. This too, is a part of our tax and revenue scheme. It simply says that "all property subject to taxation shall be taxed in proportion to value." If, as we have held herein, and heretofore held, that the imposition made by this law is not a tax upon property, this section can in no way apply. This section applies to a tax upon property, not upon a mere privilege granted as to the succession of property. We do not think that either Section 3 or 4 of Article 10 of our Constitution apply to this law. We have given our views as to Section 3 supra, and as to Section 4 we take it that a mere statement of the section answers the question.

What is here said applies with equal force to Section 8 of Article 10. This section likewise has reference to a tax upon property. We hold that this is not a tax upon property. In fact in our judgment all of Article 10 of our Constitution refers to a scheme and method of fixing taxes upon property, which taxes are recurrent at given periods, and not to other matters.

So that we rule, that under either theory of this case, the provisions of the law attacked, by the pleadings here, are constitutional and not subject to the objections made. The scheme and general purpose of the law is a valid one and should be upheld. To say that we cannot have a graduated imposition (or tax, if you please to so call it) upon the right to succeed to the property of a deceased person is so well established

elsewhere that we would be taking a step backward, to rule otherwise. We should not take such a step unless compelled so' to do by clear and applicable constitutional provisions.

The question of unreasonable classification, whilst not constitutional (White v. Railroad, 230 Mo. 1. c. 304), we have discussed, but feel that we might add a word.

The classification of subjects is a matter with the Legislature, and it is only when the courts can say that there is no reasonable basis for the classification that we should condemn the law upon that ground. Throughout the length and breadth of this Union graduated charges on the rights of sucession have been imposed, and have been upheld by the courts.

If the State has the right to give, or to withhold the property of the deceased citizen, as the courts generally hold, we can see no reason for saying that a law which classifies the recipients of the State's favor according to the amount received, is not a reasonable classification. In cases of the kind here, what is there unreasonable about a classification which puts a recipient of a $20,000 donation from the State in one class and the recipient of a $10,000 donation in another class?

Upon the whole, considering only the questions by this record presented, the law challenged is a valid one, and the probate court of Jackson County was acting within legal lines when it did the things disclosed by the record returned to us in obedience to our writ of *certiorari.* It follows that its record should be sustained and our writ quashed. It is so ordered.

*Bond, C. J.,* concurs in paragraph 4 and in the result; *Walker, Blair* and *Williams, JJ.,* concur; *Faris, J.,* concurs in result; *Woodson, J.,* concurs in all of the opinion except paragraph 4, as to which he expresses no opinion.