ST. LOUIS UNION TRUST COMPANY ET AL., Appellants, v. THE STATE OF MISSOURI.—155 S. W. (2d) 107.

Division One, July 21, 1941.

Rehearing Denied, October 30, 1941.

*Nagel, Kirby, Orrick & Shepley* and *Harry W. Kroeger* for appellants; *Charles M. Rogerson* of counsel.

*Roy McKittrick,* Attorney General, *Russell C. Stone* and *William C. Connett, IV,* Assistant Attorneys General, for respondent.

*Anderson, Gilbert, Wolfort, Allen & Bierman, amici curiae.*

BRADLEY, C.—February 14, 1921, and January 11, 1929, Madge Barney Blake, a resident of Massachusetts, created a trust with the St. Louis Union Trust Company, a plaintiff herein, as trustee. May 20, 1935, she created a trust with plaintiff company and Charles B. and Clarence E. Maloy as cotrustees. The assets of the trusts created January 11, 1929, and May 20, 1935, were derived from the

income of the trust of February 14, 1921. Mrs. Blake, still a resident of Massachusetts, died July 12, 1935.

This cause is an action under Sec. 598, R. S. 1939, 1 Ann. Stat., sec. 598, p. 368, to determine whether the State has a lien upon the assets of the three trust estates for inheritance taxes. The cause was submitted on an agreed statement of facts, and the trial court found that the three trust estates were liable for inheritance taxes in Missouri in the total sum of $182,349.69, and plaintiffs appealed.

The assets in the trust estates were intangible personal property consisting of various stocks, bonds, United States Treasury notes, etc. At the time of Mrs. Blake's death the value of the assets of the three trusts was respectively, $1,513,864.51, $136,472.73, and $200,452.53; total, $1,850,789.77. Mrs. Blake was to receive, for life, the net income from each trust estate. Each of the trusts provided for complete disposition of assets upon the death of Mrs. Blake.

At the time of the death of Mrs. Blake, there was a Massachusetts statute (Sec. 1, chap. 65, Gen. Laws, Tercentenary Ed.), providing for a tax upon legacies and successions affecting property "within the jurisdiction" of Massachusetts, and "belonging to inhabitants" thereof, and Massachusetts, domicile of Mrs. Blake, asserted the right to tax the devolution of the respective trust assets, and to enforce such claim, brought suit in the federal district court at St. Louis, against the trustees, the St. Louis Union Trust Company and the Maloys. That cause was settled and judgment entered in favor of Massachusetts in the total sum of $85,050. This judgment was paid, plus an additional $4000, "all of which payments were on account of said claim (of Massachusetts) for inheritance taxes in respect of said trust estates." It was stipulated in the present case that Massachusetts does not tax intangible personal property within the jurisdiction of the State, but belonging to nonresident decedents, even though such property is held by a Massachusetts trust company under a trust created by the nonresident decedent.

In 1929, Laws 1929, p. 102, our Legislature enacted what was termed the reciprocity section of our inheritance tax law (Sec. 576, R. S. 1929, 1 Ann. Stat., p. 357), but this section was repealed in 1939, Laws 1939, p. 182. Section 576 provided as follows:

"The tax imposed by this article in respect of personal property (except tangible personal property having an actual situs in this state) shall not be ▪▪▪ payable (a) if the transferor at the time of his death was a resident of a state or territory of the United States, or of any foreign country, which at the time of his death did not impose a transfer tax or death tax of any character in respect of property of residents of the state (except tangible personal property having an actual situs in such state or territory or foreign country), or (b) if the laws of the state, territory or country of residence of the transferor at the time of his death contained a reciprocal exemption pro-

vision under which nonresidents were exempted from transfer taxes or death taxes of every character in respect of personal property (except tangible personal property having an actual situs therein), provided the state, territory or country of residence of such nonresidents allowed a similar exemption to residents of the state, territory or country of residence of such transferor. . . ."

Our reciprocity statute had not been repealed at the time of the death of Mrs. Blake, and plaintiffs contend that, in view of the Massachusetts inheritance tax statute exempting from inheritance tax, intangible personal property within the jurisdiction of the State, but belonging to nonresident decedents, subdivision (a) of Sec. 576 exempted the trust assets from an inheritance tax in this State. On the other hand defendant contends (1) that the trust assets have acquired a business situs in this State and that Sec. 576 had no application; (2) that no transfer to the beneficiaries named in the trust estates had been made at the time of the effective date of the repeal of the reciprocity statute and that therefore, the trust property was subject to an inheritance tax, notwithstanding such statute was in effect at the time of Mrs. Blake's death; and (3) that in any event, Sec. 576 was void because it worked to the denial of due process and authorized nonuniformity of taxes upon the same class of subjects of taxation contrary to the Fourteenth Amendment to the Federal Constitution and Art. 2, Sec. 30, and Art. 10, Sec. 3, Missouri Constitution.

Have the trust assets acquired such *business situs* in this State as to make Sec. 576 inapplicable? Defendant defines business situs as "the act of a person locating his property within a given state and there using it for the purposes to which it is fitted for a sufficient length of time to indicate a course of business," and says that such definition seems to be the best "that can be garnered" from New Orleans v. Stempel, 175 U. S. 309, 20 Sup. Ct. 110, 44 L. Ed. 174; First Bank Stock Corp. v. Minnesota, 301 U. S. 234, 57 Sup. Ct. 677, 81 L. Ed. 1061; Bullen v. Wisconsin, 240 U. S. 625, 36 Sup. Ct. 473, 60 L. Ed. 830; Curry v. McCanless, 307 U. S. 357, 59 Sup. Ct. 900, 83 L. Ed. 1339; Graves v. Elliott, 307 U. S. 383, 59 Sup. Ct. 913, 83 L. Ed. 1356.

In Grieves v. State ex rel. County Attorney, 168 Okla. 642, 35 Pac. (2d) 454, 1. c. 456, it is said: "To constitute 'business situs' as basis for taxation of intangible personal property at place other than owner's domicile, possession and control of property must be localized in some independent business or investment away from domicile, so that its substantial use and value primarily attach to and become assets of outside business." Other definitions may be found in 5 Words & Phrases (Perm. Ed.), 1046 et seq.

The question in Curry v. McCanless, supra, 307 U. S. 357, was the taxable situs of certain intangible personal property belonging to

Mrs. Grace C. Scales, a resident of Tennessee. Mrs. Scales' brother, a resident of Alabama, died testate in 1905. His will bequeathed to the Title Guarantee Loan & Trust Company of Birmingham, Alabama, certain stocks and bonds issued by Alabama corporations to be held in trust for the use of his widow and at her death to be delivered to Mrs. Scales. The widow died in 1917, and without removing any of the stocks from the possession of the Birmingham trust company. Mrs. Scales, immediately upon the death of her brother's widow, executed a new trust agreement with said trust company and the intangibles remained in Alabama. In the trust Mrs. Scales reserved to herself (1) the net income for life, and the right to direct the sale and reinvestment of any or all of the stock, but the property acquired by reinvestment was to be under the trust; (2) the right to remove the trustee and name another; (3) the right to dispose of all the trust property by will, which right was exercised; and (4) the right to encroach upon the corpus of the trust, if, in her opinion, the income was not sufficient for her support. The trust was amended in 1929 and the right to encroach upon the corpus was, in part, relinquished.

Both Tennessee and Alabama asserted the right to levy and collect an inheritance tax on the intangibles in the hands of the Alabama trustee. By the will of Mrs. Scales, the Nashville Trust Company, Nashville, Tennessee, was appointed executor for Tennessee, and the Alabama trustee in the trust agreement was, by the will, appointed executor for Alabama. In order to have the question of taxable situs determined, the two executors filed suit under Tennessee's declaratory judgment statute, in the chancery court of Tennessee, and against the Tennessee Commissioner of Finance and Taxation and the Alabama Tax Commission. The chancery court of Tennessee held that Alabama could lawfully impose an inheritance tax, and that Tennessee's inheritance tax law, insofar as it purported to impose an inheritance tax measured by the trust property disposed of by the will violated the due process clause of the Fourteenth Amendment of the Federal Constitution. The Supreme Court of Tennessee held that the trust property disposed of by the will was "taxable in Tennessee and not taxable in Alabama for purposes of death succession or transfer taxes." [See Nashville Trust Co. et al. v. Stokes et al., 174 Tenn. 1, 118 S. W. (2d) 228.] The Supreme Court of the United States, opinion by Mr. Justice STONE, held (307 U. S. 357, headnote) that both Tennessee and Alabama "could constitutionally impose a tax on the transfer of the intangibles held by the Alabama trustee, but passing under the will of the decedent, domiciled in Tennessee." A minority opinion by Mr. Justice BUTLER, concurred in by Mr. Chief Justice HUGHES, Mr. Justice McREYNOLDS, and Mr. Justice ROBERTS, held that Tennessee could not impose an inheritance tax on the intangibles in the Alabama trust.

Under the rule of *mobilia sequuntur personam*, the situs of the

intangibles in the Alabama trust would have been exclusively in Tennessee, the domicile of the trustor, but the rule is not always applicable. In the minority opinion, in the Curry case, it is said (307 U. S. 1. c. 381): "The general rule of *mobilia sequuntur personam* must yield to the established fact of legal ownership, actual presence and control in a state other than that of the domicile of the owner. The phrase 'business situs' as used to support jurisdiction of a state other than that of the domicile of the owner to impose taxes on intangible personal property is a metaphorical expression of vague signification; its meaning is not limited to investment or actual use as an integral part of a business or activity, but may extend to the execution of trusts such as those created by the indenture and imposed on the trustee in this case," citing New York ex rel. Whitney v. Graves, 299 U. S. 366, 57 Sup. Ct. 237, 81 L. Ed. 285; New York ex rel. Cohn v. Graves, 300 U. S. 308, 57 Sup. Ct. 466, 81 L. Ed. 666, 668; Worcester County Trust Co. v. Riley, 302 U. S. 292, 58 Sup. Ct. 185, 82 L. Ed. 268. [See also Graves et al. v. Elliott et al., 307 U. S. 383, 59 Sup. Ct. 913, 83 L. Ed. 1386.]

Defendant, in the present case, cites, among others, the Curry case, supra, and the Graves case, supra (307 U. S. 383) in support of the contention that the intangibles here involved had acquired a *business situs* in this state but, if such be so, the reciprocity statute would not be inapplicable. The reciprocity statute made no exception of *intangible personal property,* the exception was *tangible personal property,* and it will, of course, be conceded that *intangibles,* although acquiring a *business situs* in a state other than the domicile of the owner, still remain intangibles. We rule that our reciprocity statute, Sec. 576, was applicable to the trust property concerned in the present case.

Does the fact that no transfer to the beneficiaries named in the trusts had been made at the time of the effective date of the repeal of the reciprocity statute make the trust assets subject to an inheritance tax, notwithstanding such statute was in effect at the time of Mrs. Blake's death? It does not appear that none of the trust assets had been transferred to the beneficiaries at the time of the effective date of the repeal, but for the present question we will assume that such was the case. As supporting the contention that the trust assets were subject to an inheritance tax because not transferred, etc., defendant cites Blodgett v. Bridgeport City Trust Co., 115 Conn. 127, 161 Atl. 83. In that case plaintiff was tax commissioner and defendant was the executor under the will of one Bryan. October 1, 1930, the executor filed an inheritance tax return with the commissioner. The commissioner computed ▮▮▮▮ the tax and filed his computation with the probate court. One item was an inheritance or succession tax of $35,488.12 upon a bequest to Harvard University. The testator died October 22, 1929, and it was stipulated that under the law as it was at that time, the bequest would be exempt from such

tax. The law was amended in 1931, and under the amendment such a bequest was subject to the succession tax. Distribution had not been made at the time of the effective date of the amendment. It was held that the question of tax or no tax depended on the state of the law at date of distribution and not at date of the death of the testator, and that the bequest was subject to the tax. The court said (161 Atl. 1. c. 88, 90):

"Not having the legal title during the period of administration, the beneficiary cannot convey title to a third party, though he may convey such interest as he has; on the other hand, the legal title being in the executor, the latter can convey it or make other proper use of it, such as paying the expenses of administration, or taxes, or other charges, and, in case of suits involving it, he, and not the beneficiary, is the proper party to the action. . . . It is only upon the delivery of personal property to the beneficiary through legal distribution after administration is complete that he acquires the legal title to it. By the act of distribution, the title vests, and the beneficiary becomes for the first time the legal owner of the property. It is distribution, not the death of the decedent, which transfers the title and ownership of personalty to the beneficiary. . . . The contention that this act of 1931, which became operative only after the death of Mr. Bryan, cannot constitutionally affect the rights of Harvard College, could only be sustained if we were able to hold that the title and ownership of this fund passed to the college upon the death of Mr. Bryan and became at once fully vested and the succession complete. Since we cannot so hold, it follows that, the act of 1931 becoming effective before succession was consummated, it has a legitimate operative effect in withdrawing the exemption which the college would otherwise have enjoyed under the act of 1929."

What appears to be the rule in Connecticut as to when title to a personal property bequest, for inheritance tax purposes, vests is not the rule in this State. In the case of In re Woestman's Estate (Mo.), 253 S. W. 773, it was contended "that the state has power to impose a transfer and inheritance tax upon personal property which is still in the process of administration, even though the decedent died prior to the taking effect of the law." Such contention was disallowed. In the case of In re Costello's Estate (en banc), 338 Mo. 673, 92 S. W. (2d) 723, the question was whether property bequeathed to a legatee who died before distribution was subject to an inheritance tax both on the transfer from the original testator and on the transfer from the deceased legatee. The facts were these:

James Costello, a resident of Clay County, Missouri, died testate December 27, 1933. His two sisters, Nellie Costello and Mrs. Robison, were equal residuary legatees under the will. In September, 1934, and before any distribution had been made, Mrs. Robison died testate. Under her will her daughters, Mrs. King and Henrietta Robison,

were sole legatees, and were also executrices. The inheritance tax on the property bequeathed to each of the two sisters of James Costello was $12,314.41. The two daughters of Mrs. Robison contended that since their mother had not, at the time of her death, come into possession of the property bequeathed to her, no tax could lawfully be imposed upon her share of her brother's estate. It was held that the share bequeathed to Mrs. Robison was subject to the tax, although she had not come into possession at the time of her death. The court said (92 S. W. (2d) l. c. 726):

"Mrs. Robison had a vested interest in her share of James Costello's property, subject to administration and lawful charges. She shared in any income from the property. Furthermore, she enjoyed the privilege of transferring the property by will to her daughters. We think she actually came into the enjoyment of the property within the meaning of the act." [See also, Coolidge et al. v. Long, 282 U. S. 582, l. c. 597, 51 Sup. Ct. 306, 75 L. Ed. 562.]

Was our reciprocity statute void on constitutional grounds as contended by defendant? Such statutes, in practically all the states, have existed for varying periods, and, so far as research discloses, no reciprocity statute similar to ours has been held void on constitutional grounds. Such statutes have been the result of a nation wide effort to avoid double taxation. [See City Bank Farmers' Trust Co. v. New York Central R. Co., 253 N. Y. 49, 170 N. E. 489.]

Defendant says that after State ex rel. Fath et al. v. Henderson, 160 Mo. 190, 60 S. W. 1093, and State ex rel. McClintock et al. v. Guinotte, 275 Mo. 298, 204 S. W. 806, "it could then be said that our inheritance tax was constitutional based upon the evident reasoning of the court that (1) a varying rate of tax depending on the amount of property transferred was reasonable and logical classification," but it is contended that the reciprocity statute went beyond reasonable classification. The following illustration, we think, fairly reflects defendant's contention:

A, a resident of a reciprocal state, has two sons, B and C. A goes to another reciprocal state and creates a trust estate of intangibles worth $100,000, reserving to himself the income for life, and directing that, at his death, the corpus be delivered to his son, B. A then goes to a nonreciprocal state and creates a trust estate of intangibles worth $100,000, reserving to himself the income for life and directing that at his death the corpus be delivered to his son C. When A dies the intangibles have acquired a business situs in their respective states. In the situation, assuming validity of reciprocity statutes, son B would pay no inheritance tax to the reciprocal state, while son C would pay such tax to the nonreciprocal state.

It is argued that such creates a class within a class and is patently discriminatory, and works to nonuniformity of taxation. Most all, if

not all, classifying statutes are, to some extent, discriminatory. Discrimination as such is not prohibited by the state or federal Constitution. It is only the unreasonable and the arbitrary discriminations that are prohibited. The scope of permissible legislation as circumscribed by the rule against unreasonable and arbitrary discrimination is well reflected in Hines v. Hook, 338 Mo. 114, 89 S. W. (2d) 52, l. c. 56, as follows:

"That part of the Fourteenth Amendment to the Federal Constitution reading as follows: 'No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; or deny to any person within its jurisdiction the equal protection of the laws'—has been construed to prevent the enactment of state statutes which make any unreasonable or arbitrary discrimination between different persons or different classes of persons. [12 C. J. 1128; Connolly v. Union Sewer Pipe Co., 184 U. S. 540, 22 Sup. Ct. 431, 46 L. Ed. 679.] Neither the Federal Constitution or Section 53, Article 4 (prohibiting special and local laws) of the Missouri Constitution prevents the making of reasonable classifications of persons or things for the various purposes of legislation. [Andrus v. Fidelity Mut. Life Ins. Assn., 168 Mo. 151, l. c. 162, 67 S. W. 582; State ex inf. v. Standard Oil Co., 218 Mo. 1, l. c. 368, 116 S. W. 902.] If there is a reasonable ground for the classification and the law operates equally on all within the same class, it is valid. [12 C. J. 1128.; State ex inf. v. Standard Oil Co., supra, 218 Mo. 1, l. c. 369, 116 S. W. 902; Embree v. Kansas City & Liberty Boulevard Road District, 257 Mo. 593, l. c. 616, 166 S. W. 282; State v. Webber, 214 Mo. 272, 113 S. W. 1054, 15 Ann. Cas. 983.] The question of classification being primarily one for the Legislature, it is the duty of the courts to sustain it if there is any reasonable basis for the classification. [Hawkins v. Smith, 242 Mo. 688, 147 S. W. 1042; State ex rel. v. Chicago, B. & Q. R. Co., 246 Mo. 512, 152 S. W. 28.] An act of the Legislature should not be declared unconstitutional unless it appears beyond a reasonable doubt that it is in contravention of the Constitution. [State v. Webber, supra, 214 Mo. 272, l. c. 279, 113 S. W. 1054, 15 Ann. Cas. 983.]" And see also, Hull v. Baumann, 345 Mo. 159, 131 S. W. (2d) 721, l. c. 726, and Carmichael et al. v. Southern Coal & Coke Co., 301 U. S. 495, l. c. 509, 57 Sup. Ct. 868, 81 L. Ed. 1245.]

We think defendant fails to appreciate that our reciprocity statute did *not deal* with the *persons* to whom intangibles may pass upon the death of the owner, but it dealt with *states* which did not impose an inheritance tax upon intangibles in such states and owned by residents of this State at time of death. The classification of intangible personal property for the purpose of taxation or nontaxation, under the act, is based upon the ownership thereof and whether the owner, the trans-

feror under the statute, is or is not a resident of a state, at the time of his death, which does or does not impose a tax upon intangibles in such state and owned by a resident of this State at the time of his death. We cannot appreciate how such could create a class within a class or work to nonuniformity as defendant contends. What we have in mind may be better presented by extending the illustration, supra. If A had six sons, B, C, D, E, F, and G, and had created three trust estates of same amount, etc., instead of one in the reciprocal state, and three, instead of one, in the nonreciprocal state, the sons B, C, and D taking the trust estate from the reciprocal state would be treated exactly alike, no discrimination, no lack of uniformity. And the same is true as to the sons, E, F, and G.

In Caskey Baking Co. v. Commonwealth of Virginia (Apr. 28, 1941), 61 Sup. Ct. 881, it is said: "As we have repeatedly held, the equal protection clause of the Fourteenth Amendment does not prevent a state from classifying businesses for taxation or impose any iron rule of equality. Some occupations may be taxed though others are not. Some may be taxed at one rate, others at a different rate. Classification is not discrimination. It is enough that those in the same class are treated with equality."

Defendant's contention that our reciprocity statute was void on constitutional grounds cannot be sustained. Plaintiffs made the point that, in the situation, the State, defendant here, could not attack the reciprocity statute on constitutional grounds. It will not be necessary to rule such question.

We might say that our 1941 Legislature (Laws 1941, p. 281) did not reenact the repealed reciprocity statute, but amended Sec. 571, R. S. 1939, 1 Ann. Stat., sec. 570, p. 349, by adding the following: "And provided further that nothing herein contained shall be construed as imposing a tax upon any transfer as defined in this Act, of intangibles, however used or held, whether in trust or otherwise, by a person, or by reason of the death of a person, who was not a resident of this state at the time of his death."

The judgment should be reversed and the cause remanded with directions to enter a judgment consistent with this opinion. It is so ordered. *Hyde* and *Dalton, CC.,* concur.

PER CURIAM:—The foregoing opinion by BRADLEY, C., is adopted as the opinion of the court. All the judges concur.