STATE ex rel. CARDINAL GLENNON
MEMORIAL HOSPITAL FOR
CHILDREN, Relator,

v.

The Honorable Carl R. GAERTNER,
Judge, Respondent.

No. 60485.

Supreme Court of Missouri,
En Banc.

Feb. 13, 1979.

Supplemental Opinion March 13, 1979.

R. E. Keaney, Michael J. Pitzer, John J. Horgan, St. Louis, for relator.

Hullverson, Hullverson & Frank, Inc., John J. Frank and Stephen H. Ringkamp, St. Louis, for respondent.

John D. Ashcroft, Atty. Gen., Gregory F. Hoffman, Asst. Atty. Gen., Jefferson City, for intervenors.

DONNELLY, Judge.

This is prohibition.

Deborah Lynn Burns, a minor, and her parents, Doyle Burns and Phyllis Burns, sued Cardinal Glennon Hospital for Children, Thomas E. Veeser, M.D., G. D. Searle and Company, and six "John Doe" physicians, for professional negligence, in the Circuit Court of the City of St. Louis. Cardinal Glennon Hospital filed a Separate Motion to Dismiss alleging, in part, that plaintiffs' petition should be dismissed because of their failure to comply with Chapter 538, RSMo Supp. 1976, before filing their petition in the Circuit Court of the City of St. Louis. On November 2, 1977, the trial court overruled the Separate Motion to Dismiss and effectively held Chapter 538 unconstitutional. On December 19, 1977, this Court issued its Provisional Rule in Prohibition ordering the Honorable Carl R. Gaert-ner, Judge, Circuit Court of the City of St. Louis, to show cause why a writ of prohibition should not issue prohibiting him from taking further action against Cardinal Glennon Hospital. The Attorney General and the Executive Secretary of the Professional Liability Review Board Authority were given leave to intervene. If Chapter 538 is constitutional, our provisional rule should be made absolute. If Chapter 538 is unconstitutional, our provisional rule should be quashed.

Section 538.010, RSMo Supp. 1976, reads as follows:

"As used in sections 538.010 to 538.080, the following terms mean:

"(1) 'Claimant', a plaintiff or plaintiffs in an action filed in a Missouri court seeking damages from a 'professional' or 'professionals' alleging malpractice, errors, omissions or other professional negligence;

"(2) 'Health care provider', includes physicians, dentists, clinical psychologists, pharmacists, optometrists, podiatrists, registered nurses, physician's assistants, chiropractors, physical therapists, nurse anesthetists, anesthetists, emergency medical technicians, hospitals, nursing homes and extended care facilities; but shall not include any nursing service or nursing facility conducted by and for those who rely upon treatment by spiritual means alone in accordance with the creed or tenets of any well recognized church or religious denomination;

"(3) 'Professional', means 'health care providers' as hereinafter defined;

"(4) 'Review board', a professional liability review board as provided for in sections 538.010 to 538.080;

"(5) 'Review board authority', the professional liability review board authority as provided for in sections 538.010 to 538.-080;

"(6) 'Secretary', the executive secretary of the professional liability review board authority."

Section 538.020, RSMo Supp. 1976, reads as follows:

"1. Before any action seeking damages from a professional alleging malpractice, errors, omissions or other professional negligence can be filed in any court within this state, the plaintiff in the action must have complied with the provisions of sections 538.010 to 538.080 requiring a review of the claims upon which the action is based by a professional liability review board.

"2. Prior to the filing of an action seeking damages from a professional alleging malpractice, errors, omissions or other professional negligence, the claimant shall give written notice to the secretary setting forth therein a statement of the claim, including the time of occurrence, the place, the circumstances, the alleged negligent act, error or omission, the injury or damages sustained and the relief demanded. Simultaneously a copy of the notice shall be sent by registered or certified mail to each party against whom the claim is or may be asserted. The notices shall be given within the time for filing an action as prescribed by the applicable statute of limitations. The giving of the notices shall toll the running of the statutes of limitations until such time as the review board has completed its hearing, made its recommendations, and given the parties an opportunity to act thereon as provided in sections 538.010 to 538.080.

"3. Upon receipt of such a notice, the secretary shall convene as provided herein a medical malpractice review board whose sole purpose shall be to facilitate the disposition of the medical malpractice claim, but not more than one claim may be examined by any particular board."

Section 538.025, RSMo Supp. 1976, reads, in part, as follows:

"1. Each board shall be composed of six members consisting of a judge of a circuit court, two attorneys at law, two professionals, at least one of whom shall be a member of one of the specialties involved and one lay representative of the general public. All members shall be selected and designated to serve on a board as provided herein. The circuit judge shall preside, but shall be a nonvoting member."

Section 538.045, RSMo Supp. 1976, reads, in part, as follows:

"Within thirty days after the hearing has been concluded, the review board shall make a formal statement of its recommendations, as to liability, and as to damages, if any, and if ascertainable, and mail a copy thereof to each party. Each party shall have thirty days from the date of mailing to accept or reject the recommendations in writing."

Section 538.050, RSMo Supp. 1976, reads as follows:

"If any party rejects the recommendations of the board, or, in the event all parties accept the recommendations of the board but fail to execute an agreement within the period of time provided in section 538.045, the claimant may then proceed to file his action in any court having jurisdiction of the same. No mention of, or reference to, any recommendation of the review board shall be made at the trial, and the statement of recommendations shall not be admissible in evidence."

Cases from other jurisdictions are collected in Annotation, *Validity and Construction of State Statutory Provisions Relating to Limitations on Amount of Recovery in Medical Malpractice Claim and Submission of Such Claim to Pretrial Panel*, 80 A.L. R.3d 583, §§ 8–16 (1977). However, we agree with Respondent that the statutes involved in these cases are so dissimilar from Chapter 538 that they "provide no real guidance to this Court in the determination of this case."

Chapter 538 establishes a Professional Liability Review Board Authority. Any person having a malpractice claim against a health care provider is required to refer the claim to the Secretary of the Authority before filing an action in court. Notice must simultaneously be sent to each party against whom a claim is asserted. The notice must be sent within the applicable two-year statute of limitations. § 516.105,

RSMo Supp. 1976. Giving the notice tolls the running of the statutes of limitations until the procedure is completed. § 538.020. The *Professional Liability Review Board* is empowered to hold hearings on the malpractice claim and to subpoena any record, report or other evidence deemed relevant. § 538.035. After the hearing process, the Board is to make a recommendation as to liability and damages which the parties are free to accept or reject. § 538.045. If the recommendation is rejected, an action may be filed in court. The Board's recommendation may neither be commented upon nor introduced in evidence in a subsequent court action. § 538.050. A period of six months may elapse between the time the claim is filed with the Secretary of the Authority and the time a court action may be filed.

▪ The determinative challenge to Chapter 538 is that it imposes a procedure as a precondition to access to the courts. It is contended that it violates Mo.Const. Art. I, § 14 which provides that "the courts of justice shall be open to every person, and certain remedy afforded for every injury to person, property or character, and that right and justice shall be administered without sale, denial or delay."

In 1954, Article II, § 19 of the Illinois Constitution read as follows:

> "Every person ought to find a certain remedy in the laws for all injuries and wrongs which he may receive in his person, property or reputation; he ought to obtain, by law, right and justice freely, and without being obliged to purchase it, completely and without denial, promptly, and without delay."

In *People ex rel. Christiansen v. Connell*, 2 Ill.2d 332, 118 N.E.2d 262 (1954), the Supreme Court of Illinois was confronted with a statute which required any person desiring to commence an action for divorce to file with the clerk of court a written statement of intention to file a complaint not less than sixty days or more than one year before filing the complaint. The statute provided a procedure by which a judge would attempt to induce the parties to vol-

untarily confer with him in an attempt at reconciliation. Enactment of the statute was motivated by concern with the increasing divorce rate. It was argued to the Court that the statute obstructed litigants' right of access to the courts without delay. It was stated that the objection was not to the length of the delay as such but rather to the fact that the delay was interposed before jurisdiction was obtained, and therefore, a litigant's right to seek immediate redress in the courts was violated. It was said that the enforced waiting period imposed by the statute not only caused a useless and arbitrary delay, but that delay, by abridging the right to file suit and have summons issued promptly, necessarily destroyed the remedies which depended on obtaining personal service on defendants.

The Supreme Court of Illinois agreed and held "that the divorce statute here challenged violates our constitution * * * and must be held invalid for that reason."

In *Comiskey v. Arlen*, 55 A.D.2d 304, 390 N.Y.S.2d 122 (1976), the court held that a statute providing for a medical malpractice panel did not deny the fundamental right of access to the courts. However, in New York the screening panel is convened *after* the court proceedings are commenced.

▪ We find the *Christiansen* holding persuasive. The right of access to the courts is said to trace back to Magna Charta. *DeMay v. Liberty Foundry Co.*, 327 Mo. 495, 506, 37 S.W.2d 640, 645 (1931). It has been held to be an aspect of the right to petition the government contained in the First Amendment to the United States Constitution. *California Motor Transport Company v. Trucking Unlimited*, 404 U.S. 508, 510, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972). Most importantly, it is explicitly preserved in the Constitution of Missouri.

We hold that Chapter 538 violates Art. I, § 14 of the Constitution of Missouri and must be held invalid for that reason.

▪ We note that plaintiffs Burns failed to follow the mandate of Rule 55.05 (as amended Laws 1976, H.B. No. 1307, § 1) which requires that in actions for damages

based upon the alleged negligence or malpractice of a health care provider, "the prayer shall be for such damages as are fair and reasonable." Plaintiffs Burns would justify their failure on the grounds that they plead special damages and "[w]hen items of special damage are claimed, they shall be specifically stated." Rule 55.19. The General Assembly did not amend Rule 55.19 when it amended Rule 55.05 in 1976. However, the intent is apparent and plaintiffs may not use Rule 55.19 as an excuse for failure to follow Rule 55.05. We have no reason to believe respondent judge will fail to require literal compliance with the provisions of Rule 55.05.

The provisional rule in prohibition is quashed.

BARDGETT, SEILER and WELLIVER, JJ., concur.

SIMEONE, J., concurs in separate concurring opinion filed.

MORGAN, C. J., dissents in separate dissenting opinion filed.

RENDLEN, J., dissents and concurs in separate dissenting opinion of MORGAN, C. J.

SIMEONE, Judge, concurring.

I concur in the majority opinion of Donnelly, J., and I do so for several reasons.

First, I believe the requirement contained in § 538.020 "[b]efore any action seeking damages from a professional alleging malpractice . . . can be filed in any court . . . the plaintiff . . . must have complied with the provisions of sections 538.010 and 538.080" is in conflict with Art. I, § 14, Mo. Const., providing "[t]hat the courts of justice shall be open to every person . . ." and is a denial of immediate access to the courts of this state. In my opinion any substantial impediment barring access to the judicial system is detrimental and contrary to the provisions of the Missouri Constitution.

In saying this, I do not mean to imply that innovative, flexible and modern efforts and methods to resolve societal disputes

outside the judicial arena should be discouraged or are violative of the doctrine relating to access to courts. There are many suggestions these days to resolve disputes outside the judicial arena but so far as I am aware they do not impose substantial impediments barring access to the judicial system. All I say now is that this particular act, in this particular case, is in my opinion, violative of Art. I, § 14, Mo. Const.

The decisions relied upon in the dissenting opinion do not directly address that precise issue and are distinguishable from the present case. For example in *Prendergast v. Nelson*, 199 Neb. 97, 256 N.W.2d 657 (1977), the Act there, unlike ours, required that a patient's exclusive remedy was under the act unless the patient elected not to come within the provisions of the act. The Nebraska court did discuss the "access to the courts" issue and stated that the claimants are not denied access to the courts because those who do not *elect* to come under the Act are merely required to follow a certain procedure before submitting their claims to the courts.

In *Parker v. Children's Hospital*, 394 A.2d 932, No. J–238, November 1, 1978, while upholding the constitutionality of the Act the court declared that there was no violation of a trial by jury. A similar result was reached in *Comiskey v. Arlen*, 55 A.D. 304, 390 N.Y.S.2d 122 (App.Div.1976).

Second, I have grave concern that the Professional Liability Review Board Act in requiring a judge to be a member of the review panel and imposing duties on the Chief Justice is inconsistent with the separation of powers and violates Art. II, § 1, Mo. Const. It imposes nonjudicial functions upon judicial officers outside the realm of judicial matters. *Cf. Wright v. Central-DuPage Hospital Association*, 63 Ill.2d 313, 347 N.E.2d 736 (1976).

It has always been my understanding that nonjudicial functions cannot be imposed on a constitutional court. Ever since *Hayburn's* Case, 2 Dall. 409, 2 U.S. 409, 1 L.Ed. 436 (1792) the principle has been established that nonjudicial or administrative

functions not related to judicial duties cannot be imposed on a judicial officer. Although the motive may be beneficial, our government is divided into three distinct and independent branches and it is the duty of each to abstain from and to oppose encroachments on either. In the note to *Hayburn's* Case two centuries ago, it was stated that neither the Legislative nor the Executive branches can constitutionally assign to the judiciary duties which are not properly judicial and which are not to be performed in a judicial manner. See discussion in 1 Moore, Federal Practice at 64, note 12.

Third, Chapter 538 has within its confines certain inherent deficiencies which raise a host of problems which, in my opinion, go to the basic principles embodied in the right of access to the courts: (1) While the Board has the power to subpoena records, reports or other evidence, the parties apparently may not do so—§ 538.035, subsection 2; (2) the parties rights of discovery are either immediately denied or delayed possibly to the detriment of the parties—in the *Gaertner* Case for example there were certain persons who were unknown and were sued as "John Doe"; (3) the statute of limitations may or may not be tolled as to those unknown persons against whom the plaintiff may have a claim.

These are some of the matters of great concern to me. I realize that the Professional Review Board concept and procedure seeks a worthwhile objective and was designed to address the medical malpractice crisis, to reduce frivolous claims and to attempt to expedite the disposition of cases in this area. I do not say that a review board system and procedure cannot be devised by the General Assembly which would pass constitutional muster.

I concur in the principal opinion because I believe that the particular act with which we deal does not, in my opinion, pass constitutional muster and therefore I would quash our preliminary writ heretofore issued.

MORGAN, Chief Justice, dissenting.

I respectfully dissent.

Our task is to determine whether the Professional Liability Review Board (Chapter 538, RSMo) clearly contravenes the Missouri constitutional provisions concerning access to the courts.

When faced with similar constitutional challenges to malpractice review board acts, all appellate courts of other states which have considered the same, except one, have upheld not only the review board pre-condition to trial, but have also upheld admissibility of its recommendations at trial.

Most recently, the Pennsylvania Supreme Court specifically addressed the issue of whether compulsory arbitration of medical malpractice claims (as a prerequisite to trial by jury) violated the right to trial by jury. In finding that it did not, the court stated in *Parker v. Children's Hospital of Philadelphia and Commonwealth of Pennsylvania* 394 A.2d 932 at p. 938 (*Intervenor*), (1978), at p. 6 that:

With the ever increasing demand upon judicial time, one of the accepted solutions in recent years has been the attempt to divert dispute-resolution, where appropriate, to forums other than the court rooms. This trend has been motivated by the realization that the traditional trial is not necessarily the exclusive and only effective means by which disagreements that arise within our society may be resolved. While the salutory benefits of alternative dispute-resolution do not justify a callous disregard of the responsibility to provide trial by jury in instances where that right has been assured by the organic law, it does provide a basis for not construing constitutional provisions guaranteeing the right to jury in such a manner as would exclude any other method of disposing of disputes.

In *Eastin v. Broomfield,* 116 Ariz. 576, 570 P.2d 744 (1977), the Arizona Supreme Court faced a similar attack on the constitutionality of its review panel act. In Arizona, the conclusions of the review panel are admissible in subsequent trial, although the jury is instructed that the conclusions of the panel are not binding. The Arizona

Court, in upholding the constitutionality of its review panel procedure, noted at p. 748:

> We do not agree that this provision violates the petitioners' right to trial by jury. Once the panel has considered the evidence and a decision has been rendered, either party is free to proceed to trial and present his case to the jury. ARS § 12–567(H). The jury remains the final arbiter of the issues raised and the facts presented. The statute does not take away the right of the party to have the matter finally and fully determined by the jury.

In *Prendergast v. Nelson,* 199 Neb. 97, 256 N.W.2d 657 (1977), the Nebraska Supreme Court upheld the validity of its Hospital-Medical Liability Act, which allowed introduction of a review panel's decision at trial under specific circumstances, by stating at p. 665 that:

> . . . issues of negligence are questions for the jury and that the jury is the sole judge of the credibility of witnesses . . . We do not agree with the defendant, however, that they are in any way violated by the provisions of the contested act. The medical review panel does not decide the case. It does provide evidence which may be considered by the jury. The net effect of this provision is to furnish the parties with the opinion of an expert panel. In this respect, it is no different from any other testimony received at a trial. The jury still remains as the ultimate arbiter of all fact questions raised.

Similar decisions with respect to medical review panels were rendered in *Carter v. Sparkman,* 335 So.2d 802, 805 (Fla.1976), cert. denied 429 U.S. 1041, 97 S.Ct. 740, 50 L.Ed.2d 753; *Paro v. Longwood Hospital,* 369 N.E.2d 985, 991 (Mass.1977) and *Comiskey v. Arlen,* 55 A.D.2d 304, 390 N.Y.S.2d 122, 126 (N.Y.1976). In *Comiskey,* supra, the court likened the procedure before a review board to the appointment of a non-judicial officer or master to make preliminary factual determinations at the request of the court.

Certainly the right to jury trial remains inviolate, once the pre-trial review board requirements of the act are met. The review board requirements merely establish a pre-condition to a litigant's exercise of his right to a jury trial. Prerequisites of this nature have consistently been upheld by the courts. *City of St. Louis v. International Harvester,* 350 S.W.2d 782, 786 (Mo. banc 1961); Medical Malpractice Mediation Panels: A Constitutional Analysis, 46 Ford.L. Rev. 322, 330 (1977). As noted in *Carter,* supra, at p. 807:

> The mediation panel becomes, in essence, akin to a required pre-trial settlement conference, a procedure common in many jurisdictions at the onset of litigation.

Pre-trial conferences are approved in Missouri through Rule 62. The pre-trial conference nature of the review board proceeding is especially analogous in Missouri, since no mention of or reference to the recommendations of the review board may be made at trial. § 538.050. The non-binding recommendations of the review board form the basis for settlement discussion. If any party finds that it does not wish to accept the recommendations of the panel, it is in no way bound by those recommendations and in no way required to either forego its right to a jury trial or reveal such recommendations to the jury.[1]

It is on this point that the case of *Wright v. Central DuPage Hosp. Ass'n,* 63 Ill.2d 313, 347 N.E.2d 736 (1976), which declared the Illinois medical review panel procedure unconstitutional, can be distinguished from the Missouri review board statute. The Illinois statute was more of an infringement on the right to trial by jury in that parties were bound to the panel's determinations

---

1. See *Simon v. St. Elizabeth Medical Center,* 3 Ohio Op.3d 164, 355 N.E.2d 903, 908, 909 (1976), where the Ohio Court of Common Pleas struck down the provisions of the Ohio Act (O.R.C. § 2711.21) which permitted the decision and findings of the pretrial medical arbitration board to be admitted into evidence at a subsequent trial. Right to trial by jury was not violated, however, by a local act which required arbitration of claims, but did not permit the subsequent introduction at trial of the arbitrator's findings.

unless they took affirmative action to reject the panel's decision within 28 days. (110 Ill.Stats.Anno. § 58.8). Missouri's statutes require no such affirmative action to preserve a claimant's right of access to the courts. Chapter 538 is designed to insure access to the courts in that parties are bound to the board's determination only if they both affirmatively accept the board's decision. Failure to act results in a nonbinding board decision. § 538.050.

In addition, the delay in the appointment of a review panel was greater in Illinois than it is in Missouri. Section 58.3 of the Illinois Civil Practice Act required that the circuit court order the convening of a medical review panel "no sooner than 120 days nor later than one year after the parties are at issue on the pleadings." In contrast, § 538.030 requires that in Missouri each "review board shall conclude its hearing within ninety days after the executive secretary has been notified by a claimant that a hearing is requested."

Finally, *Wright* is not persuasive on the issue of delay of access to the courts. The Illinois medical review board statute actually was declared unconstitutional because it empowered "the non-judicial members of the medical review panel to exercise a judicial function." *Wright* at 740. The delay issue was not addressed independently from this usurpation of judicial power consideration.

It is contended that Chapter 538 violates Article II, Section One of the Missouri Constitution, because the act impermissibly imposes administrative functions upon judicial officers or, conversely, endows administrative officers with judicial powers. I would reject both arguments. The review board does not make the ultimate determination of the matter in controversy. It merely makes recommendations which can be accepted or rejected by the parties. Such findings are not even admissible in evidence. Nor can it be said that Chapter 538 impermissibly imposes administrative functions on judicial officers. The Chief Justice of this court appoints a circuit judge to each review board, § 538.025, to preside but be a

non-voting member. He shall set the dates, times and places of hearings, shall apprise the board of the applicable law in each case and shall rule on the order of presentation of evidence and whether that proffered has probative value. § 538.035. The responsibilities given a circuit judge do not constitute an unconstitutional interference with the powers of the executive or legislative departments, because the purpose of the legislation is to encourage settlement of meritorious claims and to discourage litigation of frivolous claims and thus is related to the judicial process and resolution of disputes. If all findings of fact and conclusions of law were restricted to judicial courts alone, administrative boards would have to cease. In analyzing its patient compensation panel, the Wisconsin Supreme Court noted that: "It has been held, however, that a party is not deprived of due process merely because it must seek administrative resolution of its claim before it has access to the courts. (Cite omitted.) This conclusion is equally applicable to the panel review process." *Strytowski v. Wilkie,* 81 Wis.2d 491, 261 N.W.2d 434, 444 (1978). Thus, it cannot be said that a requirement that medical malpractice claims come before a Professional Liability Review Board before a claim may be filed in court is an unreasonable infringement on right to trial by jury.

*Delay and Access to Courts.*

The right of access to the courts and trial by jury is not an unfettered right that exists over and above all other rights and remedies. The legislature must be free to provide new remedies (within its police, health and safety powers) to meet new crises in these changing times. As stated in *Ex parte Peterson,* 253 U.S. 300, 40 S.Ct. 543, 546, 64 L.Ed. 919 (1920):

The command of the Seventh Amendment that 'the right of trial by jury shall be preserved' does *not require that old forms of practice and procedure be retained.* . . . It does not prohibit the introduction of new methods for determining what facts are actually in issue,

nor does it prohibit the introduction of new rules of evidence. Changes in these may be made. *New devices may be used to adapt* the ancient institution *to present needs* and to make of it an efficient instrument in the administration of justice. (Emphasis added.)

In *Comiskey,* supra 390 N.Y.S.2d at p. 126, the court reaffirmed this principle in upholding its medical malpractice panel against a state constitutional challenge that it violated an individual's right to access to the courts.[2]

Even the Illinois Supreme Court, while invalidating its medical review panel, noted that: "In so holding, however, we do not imply that a valid pretrial panel procedure cannot be devised." *Wright,* supra 347 N.E.2d at p. 741.[3]

Such a procedure has been devised in Missouri. It is a procedure which does not interfere with the ultimate jury determination of the issues and which does not unduly delay access to the courts. By clarifying issues for the parties, the Professional Liability Review Board makes that access to the courts more meaningful.

In construing a constitutional provision very similar to Art. I, § 14, the Nebraska Supreme Court, while upholding the validity of its mandatory review-panel procedures in *Prendergast,* supra 256 N.W.2d at p. 663, stated:

Defendant argues the panel provisions violate Article I, section 13, of the Constitution of Nebraska, which provides: 'All courts shall be open, and every person, for any injury done him in his lands, goods, person or reputation, shall have a remedy by due course of law, and justice administered without denial or delay.' Article I, section 13, of the Constitution is merely a declaration of a general fundamental principle. It is the primary duty

of the courts to safeguard this declaration of rights and remedies. However, it does not in any way imply that the Legislature is without power to impose a special procedure before resort to the courts. Claimants are not denied access to the courts.

Similarly, the Florida Supreme Court in *Carter,* supra 338 So.2d at p. 804, stated:

Although courts are generally opposed to any burden being placed on the rights of aggrieved persons to enter the courts because of the constitutional guarantee of access, there may be reasonable restrictions prescribed by law.

The case of *Everett v. Goodman,* 359 So.2d 1256 (La.1978), is in accord.

It is clear in the present case that if any burden is placed on a medical malpractice litigant, the condition is minimal and reasonable in light of the legislation's purpose of minimizing the medical practice crisis. When a claim is filed with the Secretary and notice is given to the parties, the statute of limitations is tolled. § 538.020.2. The statute of limitations remains · tolled while the board completes its hearing and while the parties have an opportunity to act under §§ 538.010–538.080. The delay, thus, is not otherwise detrimental to the litigant.

*Due Process and Equal Protection.*

Due process and equal protection rights have not been violated by the PLRB prerequisite. In *Zablocki v. Redhail,* 434 U.S. 374, 98 S.Ct. 673, 682, 54 L.Ed.2d 618 (1978), the Supreme Court observed that it is only when a statutory classification significantly interferes with the exercise of a fundamental right, such as the right to marry, that it is subjected to rigorous scrutiny. See also, *Attorney General of Maryland et al. v. Johnson et al.,* 385 A.2d 57 (Md.1978), upholding Maryland's medical arbitration panel.

2. In New York the claim is technically filed with the court. The case is then referred to a panel before trial is permitted. In Missouri, the claim is filed with the PLRB and filed in court only after the board's decision. These technicalities do not distinguish these cases on the issue of delay, as the delay in reaching the jury trial "state" remains regardless of which place the claim is filed and trial docket time is not handled more rapidly by the former method.

3. After the *Wright* case, the Illinois legislature enacted a Malpractice Arbitration Act, Chapter 10, §§ 201–214.

The Illinois case, cited in the majority opinion, declaring the Illinois divorce statute's waiting period to be an unconstitutional delay in access to the courts, is not persuasive in non-divorce cases nor in cases not involving fundamental rights such as divorce. See *People ex rel. Christiansen v. Connell,* 2 Ill.2d 332, 118 N.E.2d 262 (1954).

The strict scrutiny standard only applies to those cases involving fundamental rights. It is only in such cases that short delays or prerequisites to court actions have been struck down as violative of rights of access to courts. No such fundamental right is involved in medical malpractice tort actions.

In distinguishing review of medical malpractice claims from review of fundamental rights (such as access to courts for divorce), the court in *Comiskey,* supra 390 N.Y.S.2d at p. 129, noted:

> In *Boddie* [*Boddie v. Connecticut,* 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed. 113 (1971)] and in subsequent cases clarifying *Boddie* (e. g., *Ortwein v. Schwab,* 410 U.S. 656, 93 S.Ct. 1172, 35 L.Ed.2d 572; *United States v. Kras,* 409 U.S. 434, 93 S.Ct. 631, 34 L.Ed.2d 626) the Supreme Court has made it clear that *access to the courts* in and of itself *is not an independent constitutional right.* The right of access to the courts will be accorded special constitutional protection only where the right sought to be asserted through such access is a right recognized in the constitutional sense as carrying a preferred status and so entitled to special protection and then only where there is no alternative forum in which vindication of that constitutionally protected right may be sought. (Emphasis added.)

The court in *Boddie* found the fundamental relationship of marriage was afforded such status, but *the court in Comiskey,* 390 N.Y. S.2d at p. 129, emphasized:

By contrast the Supreme Court has held that access to the courts for the resolution of other claims (involving rights not subject to special constitutional protection) may be denied if there is a rational basis therefor; no proof is required of any compelling State interest or that the legislative choice of means of accomplishment was the least restrictive.

The holding in *Strytowski,* supra at p. 442, is in accord. Therein the Wisconsin Supreme Court found that tort claims involving medical malpractice "do not involve immutable personal characteristics or historical patterns of discrimination and political powerlessness," and thus are not a suspect classification. The rational basis test was applied and a reasonable basis upon which the legislature could have acted (i. e., the "malpractice crisis") was found to exist. See also *Everett v. Goldman,* 359 So.2d 1256 (La.1978), wherein the "rational basis" test was applied.

In *St. Louis Union Trust Co. v. State of Missouri,* 348 Mo. 725, 735, 736, 155 S.W.2d 107, 112 (1941), this court, in testing the validity of a state statute under the Missouri Due Process Clause, said: "Most all, if not all, classifying statutes are, to some extent, discriminatory. Discrimination as such is not prohibited by the state or federal Constitution. It is only the unreasonable and arbitrary discriminations that are prohibited."

Clearly, the majority's reliance on a divorce statute's unconstitutionality in *People ex rel. Christiansen v. Connell,* 2 Ill.2d 332, 118 N.E.2d 262 (1954), is not well founded. If, nevertheless, the case is to be considered, I would prefer to follow the reasoning therein of then Chief Justice Schaefer (a highly recognized authority on constitutional law) as set out by him at page 270 thereof.[4]

---

**4.** "But I do not agree that the generalized exhortation of section 19 of article II of the constitution that 'Every person ought to * * obtain * * * right and justice * * * without delay' invalidates the statute before us. Requirements not unlike those here involved are familiar. For example, leave of court has been a prerequisite to the filing of a complaint

in *quo warranto* for many years; (Ill.Rev.Stat. 1953, chap. 112, par. 10) leave of court is required to file a suit in equity to restrain the disbursement of public funds by State officers; (Ill.Rev.Stat.1953, chap. 102, par. 14) original *mandamus* proceedings in this court are required by Rule 46 to be instituted by a motion for leave to file a petition for a writ of *manda-*

Missouri's Professional Liability Review Board can be justified as a rational means for discouraging frivolous claims and encouraging settlement of malpractice claims, in light of the alleged current medical malpractice crisis. To the contrary, the majority opinion accepts as "determinative" the challenge to Chapter 538 that "it imposes a procedure as a precondition to access to the courts." I would respectfully suggest that the court should refrain from reaching any conclusion, predicated upon such a generalization, absent a review of "accurate" records available in the office of the Executive Secretary of the Review Board Authority; because, the real issue is whether or not the "precondition" is unreasonable.

*Crisis.*

The crisis created by medical malpractice claims is widely known. Kentucky courts have even taken judicial notice of the crisis. *McGuffey v. Hall,* 557 S.W.2d 401 (Ky.1977). Numerous other states and commentaries have discussed the increasing cost of purchasing medical professional liability insurance, a cost which has skyrocketed in recent years due to the rapid increase in malpractice claims. Some insurers allegedly are being forced out of the field. Report of the Secretary's Commission on Medical Malpractice, Dept. HEW, DHEW Pub. Nos. (OS) 73–88 and (OS) 73–89; "Alternatives to Medical Malpractice Litigation," XII No. 2 Forum (W 197 Redish, "Legislative Response to the Medical Malpractice Insurance Crisis Constitutional Implications," 55 Tex. L.Rev. 759, 793 (1977); Lenore, "Mandatory Medical Malpractice Mediation Panels—A Constitutional Examination," 44 Ins.Counsel J. 416 (1977); "Medical-Legal Screening Panels as an Alternative Approach to Medical Malpractice Claims," 13 William and Mary L.Rev. 695 (1971–72); "Recent Medical Malpractice Legislation—A First Check-

up," 50 Tulane L.Rev. 655 (1976); "An Analysis of State Legislative Responses to the Medical Malpractice Crises," 1975 Duke L.J. 1417.

The crises which the legislation seeks to meet is not directly that facing the medical profession nor its insurers, but it is the threatened effect upon the health and welfare of the public caused by the threat to the deliverability of health care services.

The increased cost of health care to the citizens of this and other states is already of grave concern. To combat this medical malpractice crisis, many states have enacted remedial legislation. Most statutes have taken the form of either voluntary or mandatory professional review panels or arbitration boards prerequisite to filing claims in court. These panels are designed to encourage speedy pre-court settlement of claims (to minimize court costs and delays), and to discourage court filing of frivolous claims.

*Presumption of Constitutionality.*

In Missouri, cases analyzing the constitutionality of Missouri statutes, this court has held that an "act of the legislature is presumed to be valid and will not be declared unconstitutional unless it clearly and undoubtedly contravenes some constitutional provision." *Americans United v. Rogers,* 538 S.W.2d 711 (1976); *State ex inf. Danforth ex rel. Farmers' Elec. Co-op., Inc. v. State Environmental Improvement Authority,* 518 S.W.2d 68 (1975). (See Mo.Digest, Key No. 48(1) Constitutional Law, for more cases in support of this principle.) Doubts as to constitutionality are to be resolved in favor of the validity of the statute and statutes are to be harmonized with the constitution and held valid if at all possible. *State Highway Commission v. Spainhower,*

---

*mus.* (Ill.Rev.Stat.1953, chap. 110, par. 259.-46.) So far as I am aware these have not been thought to violate the admonition of section 19 of article II. To the extent that that section of the constitution may be thought to have a bearing upon the validity of legislation, it adds so little to the due process clause that I would measure its breach, as it seems to me this court

did in *Clarke v. Storchak,* 384 Ill. 564, 52 N.E.2d 229, by an appraisal of the reasonableness of the particular delay involved in terms of the objective which the legislature sought to accomplish. And so measured, I would conclude that the objection based upon section 19 of article II is not well taken."

504 S.W.2d 121 (1973). In the *Danforth* case, we declared that legislative enactments should be enforced by the courts unless they "are plainly and palpably a violation of the Constitution." There is no persuasive reason for a different standard to be applied to the Professional Liability Review Board statute presently in question. As Missouri's sister states have noted, a finding of unconstitutionality should not be lightly undertaken when pre-trial review panels are statutorily established as a prerequisite to access to the courts.

We should hold that the delay created by the prerequisite of review by the Professional Liability Review Board of medical malpractice cases is minimal and certainly justified in light of the state's interest in the health and welfare of its citizens. The constitutionality of Chapter 538 should be upheld.

## SUPPLEMENTAL OPINION

### PER CURIAM:

On February 13, 1979, this Court ruled Chapter 538, RSMo Supp. 1976, unconstitutional. Section 538.020 provided a means of tolling the statutes of limitations during the time required for the Professional Liability Review Board to consider a malpractice claim and make its recommendations. We are now reminded that during the period from the effective date of Chapter 538 until February 13, 1979, a substantial number of claims against health care providers have been submitted under Chapter 538 and that such claimants have undoubtedly relied on the protection afforded them by the tolling provision of § 538.020.

In the past it has been stated that "An unconstitutional statute is no law and confers no rights . . . (citations omitted) . . . . This is true from the date of its enactment, and not merely from the date of the decision so branding it." *State ex rel. Miller v. O'Malley*, 342 Mo. 641, 652, 117 S.W.2d 319, 324 (Mo. banc 1938); *accord, Norton v. Shelby County*, 118 U.S. 425, 442, 6 S.Ct. 1121, 30 L.Ed. 178 (1886). The modern view, however, rejects this rule to the extent that it causes injustice to persons who have acted in good faith and reasonable reliance upon a statute later held unconstitutional, e. g. *Lemon v. Kurtzman*, 411 U.S. 192, 93 S.Ct. 1463, 36 L.Ed.2d 151 (1972); *Perkins v. Eskridge*, 278 Md. 619, 366 A.2d 21 (Md.1976); *Shreve v. Western Coach Corporation*, 112 Ariz. 215, 540 P.2d 687 (Ariz. banc 1975); *Downs v. Jacobs*, 272 A.2d 706 (Del.1970). We join the view espoused in *Lemon, Perkins, Shreve,* and *Downs.*

If the tolling provision of § 538.020 is viewed as retroactively unconstitutional, those claimants who have reasonably and in good faith relied upon § 538.020 to protect their rights to ultimately submit their claims to the courts would suffer a manifest injustice.

We, therefore, order that the statutes of limitations shall be tolled pursuant to § 538.020 as to those claims submitted to the Professional Liability Review Board between the effective date of Chapter 538 and February 28, 1979.